SMITH v. WINN.

1. PURCHASER—MISTAKE—RELIEF.—A party to an action, who purchases at a full price a tract of land sold under a decree in the cause, advised and believing that he is buying a fee simple title, cannot be relieved of his completed contract of purchase, nor require contingent remaindermen to be afterwards made parties in order that his title may be perfected.

2. IBID.—IBID.—RES JUDICATA.—Moreover, the purchaser is barred of the relief he seeks by an order in the cause, made subsequent to his purchase,

and unexcepted to, whereby the proceeds of his purchase were directed to be distributed among the parties to the cause.

3. FINDINGS OF FACT—COMMISSIONS.—A refusal to allow an executor commissions, approved, where such refusal was based upon findings of fact by referee and Circuit Judge, and where it appeared in the "Case" that the charge for commissions had been waived.

4. PETITION FOR REHEARING refused.
   MR. JUSTICE POPE *dissenting* as to Nos. 1 and 2.

Before HUDSON, J., Union, October, 1891.

This action is thus correctly stated by Mr. Justice Pope in his dissenting opinion:

In 1865, William Long, senior, by his will directed that the whole of his estate, real and personal, should be divided into nine shares—one of which he gave to each of his eight children and one to be equally divided between his grand-son and granddaughter, who were the children of a pre-deceased son; that the share of such devisees should be enjoyed by them during life respectively, "not subject to the debts, contracts, or disposition of the males, or the debts or contracts of any future husband of the females among them;" that a trustee was appointed for each of the daughters; that a *life estate* in one-half the real and personal estate of testator was carved out for his widow; that one of the devisees, William Long, the younger, died intestate, unmarried and childless, after testator; that Mary Long alone qualified as executrix of the will; that the life tenant divided amongst her children much of the personal estate she had received under the will; that by the terms of the will an appraisement by three disinterested persons of the property, real and personal, had to be made; that by the consent of all the children and widow the actual division was postponed until 1868, though an appraisement of the property was made in 1866; that the executrix, Mary Long, married one Upton W. Winn; that the testamentary trustee of Jane E. Smith, who was Jane E. Long, having declined to accept the office, Asa Smith became her trustee; that a disagreement as to the division when made arose amongst the children, and, as a result, Asa Smith, as trustee, his *cestui que trust*, Jane E. Smith, and her husband, William Smith, filed their complaint

against the widow, the remaining children, and the two grand-children who were named in the will as legatees and devisees, alleging that such settlement and division should be set aside, and for other relief; that pending such litigation the widow (and life tenant of half the property) died; that the special referee recommended that the share of the lands allotted for life to the widow should be sold by the master for Union County; that such recommendation of the special referee was by an order in the cause adopted by the Circuit Judge, no party to the cause objecting thereto; that so much of the contention as arose between the parties relating to the settlement and division of the estate before the life estate fell in was settled by the decision of this court on appeal, as found in 29 S. C., 591; that the terms of the sale of the land allotted to the life tenant, when sold by the master, was one-third in cash and the balance on a credit of one and two years, to be secured by the bond of the purchaser, with a mortgage of the premises; that the defendant, Charles R. Long, became the purchaser at the price of $4,590.44, of which sum he paid one-third in cash and gave his bond for the other two-thirds, secured by a mortgage of the premises; that the proceeds of this sale being about to be divided amongst the devisees hereinbefore named under the will of William Long, senior, and the purchaser having learned that, under the law as it applied to the parties before the court, his purchase could only be construed as a purchase by him of the estate of the parties to the action (a life estate), became alarmed, and applied to the Circuit Court for leave to file a supplemental answer, wherein he could set up that the parties to this action only had a life estate in the lands he had purchased; that $4,590.44 was full market value of fee simple title of said lands, and that all parties to the sale considered that full title passed; that he had been so informed by a reputable lawyer before the sale, and that there were a number of contingent remaindermen *in esse* whose presence here as parties to this action might cure the defect of his title, or, if that could not be done, that the sale might be rescinded, paying back to him the money he had already paid, and cancelling his bond and mortgage for the credit portion; that the defendant was

allowed to file his supplemental answer by which he alleged these facts, but was denied by the special referee and the Circuit Judge any relief thereunder, it being denied to him to have these contingent remaindermen made parties. He now appeals to this court.

*Messrs. D. A. Townsend* and *T. S. Moorman,* for appellant.

*Mr. William Munro,* contra.

April 24, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. After a most careful consideration of this case, stimulated by an anxious desire to relieve the appellant, Charles R. Long, from what seems likely to prove a most improvident purchase, I must confess that I am unable to perceive how such relief can be afforded consistently with well settled principles of law. The appellant was a party to the action under which the sale was made, from which he is now seeking to be relieved. He knew, or ought to have known, that, by his purchase, he could only acquire the title of those who were parties to the action; and if it was necessary that other parties should have been brought in, for the purpose of obtaining a good title for the land which he, with other parties to the action, had induced the court to order the sale of, he could have had such additional parties brought in, and if he failed to do so, he must be regarded as having offered the amount of his bid for the interests of those who were parties to the action. This case must, therefore, be regarded as another instance of the many in which persons have bought property unadvisedly, without taking the necessary steps to inquire into the title of the property which they buy, and, after the contract of purchase has been fully executed, find that they have not obtained what they thought they were buying.

It is earnestly urged, however, that the appellant bought under a mistake of law, caused by the advice of eminent counsel, and is, therefore, entitled to relief. As was said in the case of *Munro* v. *Long,* 35 S. C., 354, when this same question was before this court in a different form: "Without undertaking to

go into any discussion of what is called in one of the cases (*Norman* v. *Norman*, 26 S. C., 48,) the nice and shadowy distinction between a mistake of law and ignorance of law, it is sufficient for us to say, that there was no such mistake of law, even under the cases which have gone to the extreme in that direction, as would relieve the defendant. The mistake claimed to have been made was either in the construction of the will, or in supposing that the rights of the contingent remaindermen would be barred by the order of sale made in a cause to which they were not made parties. If the former, it is very obvious, from the cases of *Keitt* v. *Andrews*, 4 Rich. Eq., 349, and *Cuningham* v. *Cuningham*, 20 S. C., 317, that such a so-called 'mistake' would not be sufficient; for, as said by Dargan, Ch., in his Circuit decree in *Keitt* v. *Andrews*, *supra*, adopted by the Court of Appeals, a misconstruction of a will 'is rather an error of the judgment than a mistake either of the law or fact.' If, however, the mistake really relied upon (as seems to be the fact from appellant's argument here) was in supposing that the contingent remaindermen were not necessary parties, that, upon the same principle, would not be sufficient."

This language is not cited as decisive of this appeal, inasmuch as the court, in *Munro* v. *Long*, expressly declined to decide the question as to the right of appellant to relief in the case in which the order of sale was made; but it is cited for the purpose of showing that the appellant is not entitled to relief upon the ground of a mistake of law. But I am unable to perceive upon what principle of law the appellant can obtain relief, even under the case in which the order of sale was made. Even a third person, who becomes a purchaser at a judicial sale, is bound to inquire whether all necessary parties were before the court when the order of sale is made (*Trapier* v. *Waldo*, 16 S. C., 282); and if so, much more is it the duty of a purchaser who was originally a party to the proceedings. This being so, the appellant must be regarded as having bought only the interests of the parties who were before the court; and he cannot now, after his contract of purchase has been fully executed, require that other parties [be brought in], who, in a contin-

gency which has not yet occurred, may at some future day have an interest in the property.

But in addition to this default on the part of the appellant, in failing to have the proper parties brought before the court, it appears from the proceedings set out in the "Case" that the appellant has been guilty of another default. When the referee made his report of the 11th of March, 1889, ascertaining the amounts due to each of the parties to this cause, it was excepted to, and his honor, Judge Fraser, made an order recommiting the cause to the referee, and directing him to restate the accounts, "and that he take an account of the entire estate of William Long, including the share set apart to Miriam Long, the life tenant; * * * that in taking said account he include, also, the lands sold by the master after the death of said Miriam Long, so as to show the true amount due to each legatee and devisee under the will of William Long, deceased." To this order there was no exception and from it there was no appeal, and hence it must stand as the law of this case. In other words, it was an adjudication, not accepted to and not appealed from, that the proceeds of the sale from which the appellant now seeks relief, should be distributed amongst those who were then parties to the action. In view of these repeated defaults on the part of the appellant, Charles R. Long, I am unable to perceive how he can obtain the relief he seeks, without utterly disregarding well settled principles of law.

In reference to the exception as to the commissions of the executor, I concur in the views presented in the opinion of Mr. Justice Pope, and do not deem it necessary to add anything to what he has said.

It seems to me, therefore, that the judgment of the Circuit Court should be affirmed; and this being the opinion of the majority of this court, the judgment of this court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN, *concurring.* The facts as to the only point of difference in this case have been sufficiently stated. It seems that William Long, by his last will, devised an interest in certain lands to his wife, Miriam, for life, with

contingent remainders over to his grand-children; that after the death of the life tenant, proceedings were instituted for the settlement of the estate of the said William Long, to which Charles R. Long, among the other children, was made a party; and that under an order made in said case, which is still pending, the land in question was sold, and purchased by Charles R. Long for $4,590.44, who complied with the terms of sale, paid part of the purchase money in cash, and gave his bond and mortgage to the master for the remainder.

Some time afterwards the purchaser, the said C. R. Long, discovered, or was advised, that in the proceedings under which he purchased, the contingent remaindermen *in esse* were not made parties; and when proceedings were instituted against him to foreclose the aforesaid mortgage for the land, he made the defence that his title was imperfect, because of the possibility that the contingent remaindermen might at some future day make claim for their interest in the land. But this defence was overruled, and the mortgage ordered to be foreclosed against him. See *Munro v. Long*, 35 S. C., 354, where the court said: "Under action for a settlement of a testator's estate, all the children of testator being parties thereto, a tract of land was purchased, at its full value, by one of these children, who was advised by counsel, and believed, that he was purchasing a fee simple title. The purchaser took deed, gave mortgage for the purchase money, and went into possession. *Held,* that he could not resist foreclosure of the mortgage, on the ground that he was mistaken in supposing that he had purchased a fee simple title, for, whether he erred in construing testator's will to give to testator's children an absolute estate, or in supposing that contingent remaindermen provided for in said will were not necessary parties to the action under which the sale was made, it was not such a mistake of law as would be relieved against in the action for foreclosure. If entitled to any relief at all, it must be in the original case, still pending, in which the order for sale was made," &c.

Thereupon the said Charles R. Long made an application for leave to file a supplemental answer in the principal case, making the contingent remaindermen parties, in order to allow

some provision to be made curing the alleged defect in his title, or to rescind the sale, &c.   The application to file a supplemental answer seems to have been granted; but that for leave to make the contingent remaindermen parties was refused, as was also the relief prayed for.   The appeal is now to this court, alleging error in that ruling.

As this seems to me to be a hard case on the purchaser, I have spared no efforts to discover some principle or authority which would justify this court in granting the prayer of the application; but I am compelled to say that I have not been able to do so, without, in my judgment, running counter to all settled law upon the subject.   The administration of the law ought to be as uniform as possible.   We should not disturb and unsettle principle and wise rules of procedure, even under the great temptation to prevent a hardship.   The exact truth is, that the matter complained of was, to a large extent, produced by the fault of the party himself.   As a party on the record, he is bound by the judgment.   As a purchaser, he was bound to make inquiry as to the jurisdiction of the court which ordered the sale, and whether all proper parties were before it.   If the land had been sold under execution at sheriff's sale, it is perfectly clear that, under the principle of *caveat emptor*, the purchaser could have had no relief.   The sale was not a forced sale under execution, but it was what is called a judicial sale; and, as said in the case of *Trapier* v. *Waldo*, 16 S. C., 282: "It is well settled that a purchaser at a judicial sale is bound to make inquiry as to the jurisdiction of the court which ordered the sale, and whether all proper parties are before it.   There is no warranty at a judicial sale."

Besides, it would seem that this very question was practically decided in the case of *Munro* v. *Long*, *supra*.   It is true, that the parties were not the same, and, therefore, it can not be said that the question is technically *res adjudicata;* but it seems to me that the grounds upon which the decision in that case was placed apply with equal force in this.

I am, therefore, constrained to concur with the Chief Justice, that the judgment below should be affirmed.

MR. JUTSICE POPE, *dissenting.* The most serious question presented by the appeal here is that relating to a defect of parties. It arises under these circumstances: [Here follows the statement which has been already given.]

While it is quite true that this court cannot view with approval any appeal that is based upon an error of fact or of law in the construction of a will, when there is no fraud or circumvention, parties to a controversy, or their privies, may have made (*Cuningham* v. *Cuningham,* 20 S. C., 317; *Keitt* v. *Andrews,* 4 Rich. Eq., 349); nor will relief in such cases be afforded when a title paramount in another is alleged, when no eviction has been had (*Whitworth* v. *Stuckey,* 1 Rich. Eq., 410; *Lessly* v. *Bowie,* 27 S. C., 193); yet we cannot hesitate in our duty to interfere where, in the action under which a sale was made, and while the parties and the fund are still in court, and a most material defect will be perpetuated, that may be cured if new parties are made. Let us make this plain. When the testator made these provisions in favor of his children, he had it in his power to restrict their enjoyment of it. This he did, when he gave it to them for and during the natural life of each one of them. This he did, also, when he provided that the share of each one of them should not be subject to their debts, contracts or disposition. Could he have used stronger words than these to declare his intention, that the first takers, after the death of his widow, should not divest themselves of such property, indirectly by debts, or directly by sale while living, or by testamentary disposition to take effect at death? We have been impressed by this language of the will. Then, if these restrictions exist, how could these life tenants by a judgment of the court convert these lands into money, and receive that money freed from the restrictions of the will? When a master of the Court of Chancery sells lands for partition amongst the owners thereof, according to their respective rights therein, he simply acts as the agents of the parties. *Tunno* v. *Fludd,* 1 McCord, 121. And if, in the progress of a cause, the court becomes acquainted with some provision of an instrument before it, to which provision accidentally parties have failed to direct its attention, such court will not hesitate to apply the proper relief.

In the case at bar, this defendant has contracted to pay $4,590.44 for lands, the fee simple title to which is only worth that sum, and the proceeds arising from such sale is about to be paid away to the life tenants, with no liability on their part to treat the fund as other than their absolute property; that at the death of each life tenant successively, the surviving child or children of such deceased life tenant become tenants in common with the purchaser. Under this will the child or children of deceased child or children of William Long, senior, take as purchasers and not by descent. To this property their rights, therefore, are independent of their immediate ancestors. Under our decisions they are contingent remaindermen. *Faber* v. *Police*, 10 S. C., 376; *Mangum* v. *Piester*, 16 *Id.*, 316; *Farr* v. *Gilreath*, 23 *Id.*, 502. Being contingent remaindermen and *in esse* at the time of the sale, and not being made parties to the action for a sale, they are not bound by the judgment in such cause, and are not bound by the sale thereunder. *Moseley* v. *Hankinson*, 22 S. C., 323. What, therefore, must be done? It is the high prerogative of the Court of Equity to be able to afford relief in just such circumstances, and it is a blessing to the world that such is the case.

When, as in some cases, a tract of land becomes unproductive of income to those who have a life estate therein, with a remainder over therein contingent, and such contingent remaindermen, or some of them, are *in esse*, the Court of Equity will act upon the land; that is, with all these parties *in esse* before it, the land will be sold, and the fund arising therefrom will be substituted for the land, and this fund will be preserved, so that the life tenant may receive the interest thereon during his lifetime, and at his death the fund will be turned over to the contingent remaindermen. Thus, the purchaser of the land gets a fee simple title—the life tenant the benefit of the *corpus* let out at interest—the contingent remaindermen the *corpus* on death of life tenant. This power of the court is distinctly and carefully laid down in the opinion of the court in the case of *Bofil* v. *Fisher*, 3 Rich. Eq., 1, and has been adhered to ever since. In that case it was held, that the Court of Equity has the power to sell the estate, whether vested or contingent, of

infant remaindermen who are parties before the court, and to bar, by its decree, the rights of unborn or absent remaindermen in such cases. The court acts upon the property, and by the sale under its decree vests the fee simple title in the purchaser. The rights of all the parties in interest are transferred from the property to the fund arising from the sale, and, so far as is practicable, are protected. To such a suit, it is sufficient if the parties holding the life estate, and all other persons *in esse* who have an interest and are known, are before the court as parties.

In the case at bar, it is made to appear that there are contingent remaindermen *in esse* and within the jurisdiction of the court. While it is true that the land has already been sold, it is a question easily settled, with all the parties before the court, whether such a sale was fair, price full, and in all other respects such an one as realized on the purchase money paid therefor a sum equal to the value of the fee simple title therein. If such be the facts, the parties who are contingent remaindermen are as well protected by being made parties afterward as they would have been if original parties to the action. But if it be made to appear hereafter in the action that the purchaser did not pay full price, the sale should be rescinded. Assuming, for we express no opinion thereon, that the sale was regular and advantageous, then the decree in the court below should be made to protect the estate in remainder. Some scheme should be reported to the court whereby the interest in the *corpus* of the purchase money—we mean the $4,590.44, less the costs of sale, and master's commissions—shall be paid to the life tenants during life, and at the death of each one of such tenants the share in such *corpus* shall be paid over to the child or children so surviving such deceased child; but also providing such child—a life tenant—should die childless, such share of the one so dying shall be paid to his surviving life tenants, or their children, if they be dead. Of course, it follows that appellants' exceptions which relate to this matter are sustained.

There is an exception by the executrix that relates to commissions on the estate. There was a refusal to allow these

commissions.    This was a question of fact.    There was some testimony in support of this finding of fact by the special referee and the Circuit Judge, and, therefore, under the rule, we would not interfere.    But we are led to remark that in the "Case" we find (at folio 95 of the old Brief, that is made a part of this,) "$55 allowed the executors for necessary traveling expenses for eleven years, they charging no commissions."    This is unexplained; was reduced to writing by the special referee as an admission for his regulation while the attorney for the executrix (Mr. Steadman) was present.    This exception should have been overruled.

Judgment affirmed.

May 11, 1892.    Upon a petition for a rehearing filed in this case, the following order was endorsed

PER CURIAM.    We are unable to discover that the court has either overlooked or disregarded any material fact or important principle of law; and hence there is no ground for a rehearing.    It, is therefore, ordered that this petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.