## GLOVER et al. v. BRADLEY et al.

### (Circuit Court of Appeals, Fourth Circuit. May 2, 1916.)

### No. 1406.

1. PARTITION ☞109(1)—PARTIES—SALE—TITLE OF PURCHASER.

Where contingent remaindermen were not made parties to a partition suit, though the life tenants were, a sale of the land for partition disposes only of the life estates, and does not carry the fee.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 375, 376, 387; Dec. Dig. ☞109(1).]

2. REMAINDERS ☞16—SALE OF LAND SUBJECT TO REMAINDERMEN—AUTHORITY OF COURT.

A sale of land by order of court in a suit to which the remaindermen in being were parties is binding on all contingent remaindermen.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 11; Dec. Dig. ☞16.]

3. REMAINDERS ☞16—SALES—UNAUTHORIZED SALE—RATIFICATION.

A testator devised interests in lands to his children, devising a life estate to his daughters, with remainder to their issue, and remainders over in default of issue. In a suit to which the daughters were parties, though the remaindermen in being were not, the lands were ordered sold for partition. After the sale, the executor, who bought in the lands and resold them at a profit, brought a suit against the children, life tenants and contingent remaindermen, setting forth the existence of the fund, his desire to distribute it among the heirs, and praying a construction of the will. *Held*, that as the fund had taken the place of the land, and as the remaindermen in being were made parties, and the court might bind contingent remaindermen by its decree, it could in such proceeding ratify the original sale and vest the title in fee in the executor, though his original purchase gave him only a life estate.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 11; Dec. Dig. ☞16.]

4. EVIDENCE ☞82—PRESUMPTIONS—JUDICIAL PROCEEDINGS.

In such case, where the law required that the proceedings be heard in open court, it will be presumed, notwithstanding a consent that the decree should be made at chambers, that it was made in open court.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 104; Dec. Dig. ☞82.]

5. ESTOPPEL ☞37—AFTER-ACQUIRED TITLE.

Though the purchaser from the executor was not made a party, the executor's title, having been perfected, inured to the benefit of the purchaser; no relief against him being sought.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 91–98; Dec. Dig. ☞37.]

6. ATTORNEY AND CLIENT ☞101(1)—AUTHORITY OF ATTORNEY—CONSENT JUDGMENTS.

Consent of counsel to orders and judgments made in the progress of a cause and intended to promote the interest of his client is binding on the client; a compromise settlement made in good faith by counsel, though the client is an infant, when sanctioned by the court and embodied in a decree, being binding.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 209–213, 216; Dec. Dig. ☞101(1).]

**7. ATTORNEY AND CLIENT** ⊚⇒101(1)—AUTHORITY OF ATTORNEY—RELEASE OF CLAIM.

An attorney cannot release his client's claim, except upon full payment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 209-213, 216; Dec. Dig. ⊚⇒101(1).]

**8. ATTORNEY AND CLIENT** ⊚⇒101(1)—AUTHORITY OF ATTORNEY—DISCLAIMER.

An attorney has no general power to execute a retraxit or disclaimer, or otherwise bind his client by the surrender of his rights.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 209-213, 216; Dec. Dig. ⊚⇒101(1).]

**9. ATTORNEY AND CLIENT** ⊚⇒85—AUTHORITY OF ATTORNEY—INFANTS.

An attorney who is representing interests antagonistic to infant clients cannot give binding consent to a decree against the infants, and a decree based on such consent is invalid.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 137; Dec. Dig. ⊚⇒85.]

**10. INFANTS** ⊚⇒107—CONSENT DECREE—VALIDITY.

Where, in a proceeding to which infants were parties, the court, after reference to a master, rendered a decree, it will be upheld, and is binding on the infants, though there was a stipulation that such decree might be entered by consent at chambers, for the decree was based on the action of the court, and not the consent, which was not binding on the infants, being signed by their attorney, who was representing interests antagonistic to them.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 308; Dec. Dig. ⊚⇒107.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit by Eunice Glover and others against Peter B. Bradley and another. From a decree for defendants, complainants appeal. Affirmed.

W. B. Gruber, of Walterboro, S. C., and James Simons, of Charleston, S. C. (Howell & Gruber, and Fishburne & Fishburne, all of Walterboro, S. C., Edward W. Hughes, of Charleston, S. C., and Claude E. Sawyer, of Aiken, S. C., on the brief), for appellants.

George F. Von Kolnitz, of Charleston, S. C., George F. Von Kolnitz, Jr., of Spartanburg, S. C., and J. M. Moorer, of Walterboro, S. C. (Padgett & Moorer, of Walterboro, S. C., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The complainants, contingent remaindermen under the will of Dr. John O. Glover, late of Colleton county, S. C., brought this suit to have declared invalid as a cloud upon their title the claim of Peter B. Bradley and Robert S. Bradley to 3,230 acres of land devised by Dr. Glover. The defense is that W. K. Ryan, trustee, under whom the Bradleys claim, acquired the interest of all the devisees under the will, including contingent remaindermen, by virtue of proceedings in the court of common pleas for Colleton county to which the contingent remaindermen were parties. The District Court, holding that the complainants were barred by the proceedings

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and that defendants had a good title against them, dismissed the bill.

The clauses of the will pertinent to the issue are as follows:

"Fourth. All the rest and residue of my estate of every kind and description, and wherever the same may be I give, devise, and bequeath to my wife, Margaret A. Glover, and my children, James Bowman Glover, Annie Eliza Glover, Catharine Clara Paul Glover, Mary Maria Glover, and Florence Spencer Glover and any other child or children, that I may leave living at my death, to be equally divided among them share and share alike equally; the issue of any deceased child, that may have died in the meantime leaving issue then living, to represent the ancestor and take per stirpes.

"Fifth. The property hereby given to my daughters, I give, devise, and bequeath unto them and each of them, during the natural life of each, and no longer, absolutely free from the debts, contracts and engagements of any husband either of them may marry, and from and after the death of either of my daughters, I give, devise and bequeath, the property given to such daughter, to be equally divided among her issue then living, the issue of any deceased child of my said daughter that may have died in the meantime, leaving issue, then living, to represent the ancestor, and take per stirpes. But should either of my aforesaid children, die without leaving issue then living, then and in that case, I give, devise and bequeath the property hereby given to such, to be equally divided, among my surviving children, the issue of any deceased child then living to represent the ancestor, the issue of any deceased child then living to represent the parent in said partition and take per stirpes.

"Sixth. I will and direct that all of my estate remaining after payment of debts be kept together under the management of my wife, Margaret A. Glover, subject nevertheless, to the supervision of my executors, and the net income thereof, appropriated, to the maintenance and education of my children and support of my wife, and I hereby give to and confer on my executors, ample power to control and manage my estate, whenever in their opinion it becomes necessary for them to do so, to preserve the property, and to maintain and educate my children and support my wife: Provided always, nevertheless, that as each of my said children arrives at the age of twenty-one years, or marries, that then my said executors shall deliver their portion hereby given to such child, to him or her, as the case may be. * * * "

The widow, having elected to take dower, forfeited under the terms of the will the devise to her, and the property covered by it passed to the children of the testator in the same proportion and under the same limitations as the direct devises to them.

No question is made of the correctness of the finding of the District Court that each daughter of the testator took an estate for life in the undivided interest devised in paragraph 4 of the will, with a contingent remainder to her issue living at her death, or in default of issue to the remaining children of the testator. The complainants as children of the daughters are therefore contingent remaindermen.

[1] On January 29, 1879, James B. Glover, a son, and Annie E. V. Glover, a daughter of testator, brought a suit in the court of common pleas against the other daughters for partition and sale of 4,527 acres of land. The complaint alleged that the children of Dr. Glover were "entitled to one undivided fifth each in fee in said estate," that the debts were inconsiderable, and that the land was yielding no income. Although there were living children of the daughters, none of them were made parties. The allegation in the complaint that the daughters took a fee under the will indicated that it was intended to sell the fee and that it was supposed to be unnecessary to make the grandchildren of testator parties. The cause proceeded regularly, with the result that at a sale made by the order of the court the land was purchased by B. F. Davis for $7,350. The purchaser having failed to

comply, James S. Glover purchased it at a resale ordered by the court for $2,500. Title was made by the sheriff December 14, 1880, and the sale was confirmed November 18, 1881, but the disposition of the purchase money does not appear. On the day of the confirmation James S. Glover conveyed to W. K. Ryan, trustee, all of his purchase except two tracts, aggregating in area 327 acres, for the consideration of $9,900. Through successive deeds the title of James S. Glover under the judicial sale was finally acquired by Wm. L. Bradley by deed from the Rose Phosphate Company dated May 4, 1887, for the expressed consideration of $24,000. The defendants Peter B. Bradley and Robert S. Bradley acquired the title of Wm. L. Bradley by devise. It is evident that, if there had been nothing else, the Bradleys would own only the life estate of the children of Dr. Glover, subject to the rights of the complainants as contingent remaindermen.

[2, 3] This brings us to the consideration of the effect of the orders of the court in a later suit. On December 1, 1881, Henry C. Glover and James S. Glover, as executors of the will of John O. Glover, brought suit against the children, life tenants, and the grandchildren, contingent remaindermen, under the will of Dr. Glover. The scope of the suit as indicated by the complaint is important in determining the effect of the orders of the court made in this cause. The complaint sets out the former suit for partition; the sale of the land for $2,500; the insufficiency of the fund to pay the debts of the estate amounting to $3,500; the sale by James S. Glover of the land to W. K. Ryan, trustee, for $9,900, and his desire to turn over the profit on the sale to the legatees and devisees under the will of Dr. Glover, after the payment of debts, reasonable compensation to him, and the expenses of the administration; the embarrassment of the executors in the distribution of the surplus, "the said will being uncertain and seemingly contradictory in its terms;" the right of the executors to the aid of the court in interpreting the will and deciding whether the children of testator are entitled to have their portions turned over to them on their arriving at the age of 21 years, or marrying, or whether there is a limitation over to their issue. The prayer was as follows:

"Wherefore plaintiffs demand the judgment of this honorable court, whether they can deliver the portions to the children of testator, on their arriving at the age of 21 years, or marrying, or whether there is a limitation over to their issue, and for such other relief as is stated in said complaint as may be just."

The infant remaindermen answered by guardian ad litem, submitting their rights to the court. The son and daughters of testator alleged in their answers that, having arrived at the age of 21 years, they were entitled to have the funds in the hands of the executors paid over to them under the sixth clause of the will, which provided:

"That as each of my said children arrives at the age of twenty-one years, or marries, that then my said executors shall deliver the portion hereby given to such child to him or her as the case may be. * * *"

The special master to whom the issues were referred made a report on January 23, 1882, in which he finds that the lands, though previously very valuable, had been rendered almost valueless by the

results of the war; that the executors had with difficulty paid the taxes; that but for the advances made by James S. Glover, one of the executors, the lands would have been sacrificed, leaving debts unpaid; that James S. Glover had been at much expense and trouble to resell the land for $9,900, and should be allowed additional compensation of 5 per cent.

On the issue of the construction of the will made by the pleadings the master reported:

"That item sixth of the will of John O. Glover confers on the executors of his estate ample power to pay over to each of his said children, as each arrives at the age of twenty-one years, or marries, the portions given them by the will."

Accordingly he recommended that the net balance arising from the sale of the lands be turned over to the children of Dr. Glover, and that the sale made to James S. Glover, and by him to W. K. Ryan, trustee, be confirmed. The report was confirmed on the same day.

This recital of the proceedings shows plainly that the judicial sale to James S. Glover was understood as a sale of the fee in the land, and not merely of life estates; that James S. Glover, by his deed to Ryan, trustee, intended to convey the fee; and that he brought the proceeds into court to represent the land, and not life estates in it. The acceptance of the court of the fund as the representative of the land is equally plain. This dealing of the court with the fund, and the disposition of it as the representative of the land, with all parties interested, including the contingent remaindermen, before it, necessarily implied recognition and confirmation of the sale as a conveyance of the interest of all concerned. The order of the court confirming the sale was therefore only the expression in definite form of what the court did by implication when it undertook to pass on the rights of all the parties to the fund which had been brought into court as the proceeds of the sale of the land.

It is not disputed that a sale of land made by the order of the court in a suit to which the remaindermen in esse were parties would be binding on all contingent remaindermen. Bofil v. Fisher, 3 Rich. Eq. (S. C.) 1, 55 Am. Dec. 627; Bouknight v. Brown, 16 S. C. 155; Powers v. Bullwinkle, 33 S. C. 293, 11 S. E. 971; Smith v. Winn, 38 S. C. 188, 17 S. E. 717, 751; Hunt v. Gower, 80 S. C. 80, 61 S. E. 218, 128 Am. St. Rep. 862; Harris v. Harris, 86 S. C. 409, 68 S. E. 628. The power of the court to make a sale connotes the powers to confirm a sale already made without sufficient authority. The rights of all parties in such case are transferred from the property to the fund, which the court disposes of according to its conceptions of their rights and interests. Smith v. Winn, supra.

[4] The objection that the order could not be made at chambers is without foundation in fact. The presumption is that the order was made in open court. The consent that it should be made at chambers does not imply that it was so made. It is presumed that the judge would have refused to hear the cause at chambers, if the law required it should be heard in open court. Ex parte Pearson, 79 S. C. 302, 60 S. E. 706.

[5] The failure to make W. K. Ryan, trustee, the purchaser from James S. Glover, a party, does not affect the force of the decree against the remaindermen. James S. Glover was a party, and the decree of the court operated as confirmation of the sale to him and his action thereunder. The sale by Glover to Ryan, trustee, was an incident of Glover's purchase, and the profit paid by Ryan was an inducement for the confirmation of the sale to Glover, but it was not necessary to the confirmation of the sale to Glover that Ryan should be before the court. Looking at the matter in another way: James S. Glover had brought the fund into court as the representative of the land, and Ryan had paid the money for what was intended by him and Glover as the conveyance of the fee. There was nothing that the court could require of Ryan. It might have been important to him to be a party, so that in case the court refused to receive the money and confirm the sale to Glover, on which his title depended, he could have asked that the money be refunded; but his absence from the case as a party, or the loss of his money, could not have injuriously affected the remaindermen, for no relief was sought against him.

[6-10] Again, it is contended that the decree was taken by consent, and cannot have the effect of an adjudication of the rights of the infant contingent remaindermen. Varying constructions of consent decrees have been given by the courts. In South Carolina the general rule is settled by the following language used in Edgerton v. Muse, 2 Hill's Eq. 51:

"Be this, however, as it may, I think the court must exercise the right of correcting its decrees in ex parte cases and cases by consent, so long as they remain unexecuted. For although they purport to be the act of the court, and as such have legal effect, yet in point of fact they are the mere act of the parties. Neither the facts nor the law can be said to be judicially ascertained in such a proceeding. The only restriction upon the exercise of this power ought to be the execution of the decree. It is then that the decree ought to be regarded as final, and to be an estoppel between all parties and privies. It then has the force of a judgment, by either vesting or divesting rights; and also by operating as authority to officers of the court acting under it, and as title to purchasers who may buy under it. This restriction guards the power against all possible abuse."

In this case the answers of the daughters of the testator and the answers of the infants were signed by the same counsel, although their interests were antagonistic. Appended to the decree is a consent "to this order and that it be granted at chambers," signed by the counsel who put in the answers. The decree was intended to bar any claim of the infants to a contingent interest in the land.

Consent of counsel to orders and judgments made in the progress of a cause and intended to promote the interest of his client is binding on the client. Ex parte Jones, 47 S. C. 393, 25 S. E. 285; Dixon v. Floyd, 73 S. C. 202, 53 S. E. 167. And a compromise settlement made in good faith by counsel, even if the client be an infant, when sanctioned by the court and embodied in a decree, is binding. Thompson v. Maxwell, 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539. But an attorney has no authority to execute a release of his client's claim, except upon full payment. Gilliland v. Gasque, 6 S. C. 406. Nor has an attorney the power, except under special authority, to execute a re-

traxit or disclaimer, or otherwise to bind the client by the surrender of his rights; for a retraxit, or disclaimer, or other form of a surrender, being in the nature of a release, must be made by the party himself. Dickerson v. Hodge, 43 N. J. Eq. 47, 10 Atl. 111; Thompson v. Odum, 31 Ala. 108, 68 Am. Dec. 159; Gorham v. Gale, 7 Cow. (N. Y.) 739, 17 Am. Dec. 549; Hallack v. Loft, 19 Colo. 74, 34 Pac. 568; Coates v. Santa Fé Ry. Co., 15 Ariz. 25, 135 Pac. 717; Turner v. Fleming, 37 Okl. 75, 130 Pac. 551, 45 L. R. A. (N. S.) 265, Ann. Cas. 1915B, 831; Forest Coal Co. v. Doolittle, 54 W. Va. 210, 46 S. E. 238. In Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047, it was held that a guardian ad litem himself has no power to bind an infant by consenting to surrender his rights.

We think it follows that, if the decree in this case could be considered as entered against the infants by virtue of consent of counsel, it would not be binding, because it would denote a surrender of the rights of the infants without investigation by the court. Regarded as a consent decree, it would be invalid against the infants for the additional reason that the counsel who signed the consent represented the daughters of the testator, who were antagonistic in interests to the infants, and therefore could not represent them. White v. Joyce, 158 U. S. 128, 15 Sup. Ct. 788, 39 L. Ed. 921.

But the decree cannot be referred to the consent. Without respect to consent it is always the duty of the court to make careful inquiry as to the rights and interests of the infants before adjudicating them; and the presumption is that the court has discharged this duty. Thompson v. Maxwell, supra. The presumption in this case is not necessary, however, for it affirmatively appears from the record that the court ordered a reference to the master, and that there was a full report by him on both the law and the facts involved. The decree was in terms based on this report, and not on consent, and was therefore binding on the infants.

The complaint in the proceedings under review was inartificially drawn, there are irregularities in the conduct of the cause, and the decree of the court was erroneous; but, with all necessary parties before it under pleadings which necessarily involved the recognition and confirmation of the sale and the substitution of the fund for the land, the court after investigation adjudicated the rights of the children and grandchildren of the testator and decreed that the fund should be paid to the son and daughters of Dr. Glover. This decree necessarily confirmed the sale to James Glover against any claim of the complainants.

Affirmed.