HENRY KRUG, et al., Respondents, v. FREDERICK A. BRUCKMAN, et al., Appellants.

In the Kansas City Court of Appeals, April 30, 1923.

1. **INTEREST: Judgment: Unless a Federal Judgment Directly and Expressly Awards Interest, None Can be Taken or Demanded.** Unless a Federal judgment directly and expressly awards interest, none can be taken or demanded; neither can a Federal District Court add interest to a judgment or decree if the judgment, decree or mandate of the appellate court has not directed that it be done.

2. **APPEAL AND ERROR: On Appeal in an Equity Case it is the Duty of Appellate Court to Examine Record and Pass Upon the Evidence, Determining for Itself the Right of the Matter.** In an equity case it is not only within the power, but it is the duty of the appellate court to examine the record and pass upon the evidence, determining for itself the very right of the matter, according deference to the conclusion of the chancellor.

3. **INTEREST: Evidence Held to Show Erroneous Assumption of Plaintiff's Counsel as to Agreement That Interest on Deposit in Lieu of Supersedeas Bond Should be Turned Over to Successful Litigant.** Colloquy of counsel, occurring immediately after Federal Court had announced its decision in certain patent infringment litigation, as to interest allowable on money deposited by unsuccessful defendant in lieu of *supersedeas* bond on appeal, *held* to show that counsel for plaintiff erroneously assumed that an

allowance of interest to them was agreed to, and that agreement drafted by other counsel representing trial counsel, which provided that interest on the deposit should be turned over to the parties entitled thereto, according to the terms of the decree on appeal, was result of such erroneous assumption.

4. ATTORNEY AND CLIENT: Authority: Attorney Has no Power to Dispose of Client's Substantial Rights Without His Consent. While an attorney may make valid agreements relating to the conduct of a suit, he has no power to dispose of his client's substantial rights without the latter's consent.

5. ———: ———: Express: Implied: Stipulations: Stipulation Not Within Authority Given to Attorney Executing it Will Not be Enforced. A stipulation not within authority impliedly or expressly given to the attorney executing it will not be enforced.

6. ———: ———: ———: ———: ———: Equity Will Not Enforce Stipulation Which Goes Outside of and Beyond Substantial Terms of Decree. Equity will not enforce a stipulation which, without clear authority to do so, goes outside of and beyond, or attempts to add to, the substantial terms of the decree.

Appeal from the Circuit Court of Buchanan County.— *Hon. L. A. Vories,* Judge.

AFFIRMED.

*Toulmin & Toulmin* and *Wm. E. Stringfellow* for respondent.

*Albert E. Dieterich* and *Groves & Watkins* for appellant.

TRIMBLE, P. J.—The litigation herein reviewed arose upon the filing of a petition in the nature of a bill of interpleader by Henry Krug, trustee of a certain fund hereinafter described, to have the interested parties secure an adjudication of their respective claims with regard to nearly $7000 of interest accumulated on said fund while in the hands of said trustee awaiting the outcome of certain patent-infringement litigation then pending in, but now determined by, the Federal Courts.

Neither the decree of the Federal District Court, nor the judgment of the United States Circuit Court of Appeals affirming the decree, made any disposition of the interest accruing on the fund during the pendency of the patent-infringement litigation; and after such litigation was determined, both the winners and losers therein laid claim to said interest. Hence the trustee invoked the aid of a court of equity to obtain a decree settling the question to whom said interest should be paid.

Sometime prior to April 12, 1918, the following named defendants herein, to-wit, Frederick A. Bruckman, George W. Weatherly, Alexander McLaren and the American Cone and Wafer Company, a corporation (all of whom will, for brevity, be hereinafter designated as "Bruckman et al."), holders of a patent on certain automatic ice-cream cone-making machines, brought suit in the St. Joseph Division of the United States District Court for the Western District of Missouri, against the following named defendants herein, to-wit, Roberts Cone Manufacturing Company, a corporation, Webster M. Roberts, Park D. Roberts and C. H. Bacher (hereinafter, for brevity, termed "Roberts Cone Mfg. Co. et. al."), for infringement of complainants' patent and to recover royalties for the use of the machines found to be an infringement of that patent. That litigation resulted in a decree in the district court in favor of the complainants, Bruckman et al., and against the defendants therein, Roberts Cone Mfg. Co. et al., establishing the fact of infringement and adjudging a recovery of the royalties arising and to arise during the pendency of the litigation.

The defendants in that suit immediately gave notice of an appeal, but there being some question as to the amount of the *supersedeas* bond necessary to be given, the decree provided that by agreement of parties, in lieu of an appeal bond, the defendants should deposit in the American National Bank of St. Joseph, Missouri, in

the name of Henry Krug, trustee, a sum equal to the royalties on cones manufactured on said infringing machines. The decree further provided that if upon appeal it was affirmed the money so deposited should be immediately delivered to the complainants, but if the appellate court held there was no infringement, then such deposit should be immediately redelivered to the defendants in that suit.

The decree made no mention of interest on the money deposited in lieu of bond, nor did the decree in any way provide for the recovery of interest. And the fund which is the subject of the controversy herein is interest which the trustee agreed to pay for the use of the money while on deposit in his bank in his name.

It further appears that the trial in the Federal District Court was concluded about 9:20 o'clock at night of March 22, 1918. The court announced its decision in favor of complainants. Counsel for defendants gave notice of an appeal. Whereupon counsel for complainants stated that the appeal bond ought to be fixed at $50,000 as he was informed the defendants had in the last year sold a hundred million cones, on which complainants were entitled to a royalty of forty-five cents per hundred. The court remarked that the bond ought not to be so large as to prohibit an appeal. Whereupon complainants' counsel suggested that the money for the royalties be paid into court. Counsel for defendants objected to paying the money into court "on account of the interest" but said that they were willing to pay it to some trust company. The court said that ought to be satisfactory to complainants and that it thought $10,000 would be a sufficient bond. Counsel for defendants asked "Why give a bond? We will put the money in a trust company and leave it with the trust company until the Court of Appeals reaches an agreement." Counsel for complainant said it seemed to him they ought to be entitled to interest. Counsel for defendants retorted: "You can't have interest if we put in a bond." And the court remarked: "If the defendants lose the

use of the money they should not pay interest." Counsel for complainants replied that they had lost the use of the royalties. The court then orally directed that the decree be drawn providing for the payment of the money to some trust company or bank in lieu of a *supersedeas* bond, and then remarked that an arrangement could be made with a trust company to pay a small rate of interest.

As counsel for the respective sides were anxious to get away that night for their homes in the east, the decree was not drafted then, but counsel for each side afterward prepared drafts of a decree which were submitted to the judge who, adopting substantially the decree prepared by counsel for complainants, prepared one of his own and sent it to the Clerk of the Court at St. Joseph to be entered of record. This was done on April 12, 1918.

The trial of the case was conducted for the complainants by Mr. Dieterich of Washington, D. C., and for the defendants by Mr. Toulmin of Dayton, Ohio. Although, previous to the trial, Groves & Watkins of St. Joseph, Mo., had acted as local assistants to Mr. Dieterich, in certain preliminaries, and Culver & Phillip of St. Joseph had, previous to the trial, acted in a similar capacity for Mr. Toulmin (doing whatever he directed them to do and having no authority to do more than what they were told to do), yet none of the local assistants had any part in, or were present during, the trial; nor were they present at the time of the colloquy above mentioned, which took place immediately upon the close of said trial. Nor did any of such local assistants have any part in the preparation of the decree which was later prepared and entered.

Mr. Toulmin at the conclusion of the trial had only ten minutes to catch his train, so he left the selection of a trust company and of a trustee to his clients and Mr. Phillip.

Thereafter, Henry Krug was suggested as a satisfactory trustee and it was ascertained that he was will-

ing to pay four per cent interest on the money deposited with and held by him under the trust.

Before the decree had been prepared, and about April 4th, Mr. Bacher, Secretary and Treasurer of the Roberts Cone Mfg. Co., called on Mr. Phillip and told him the patent infringement case had been decided and that an amicable arrangement had been made by which the Roberts Cone Mfg. Co. was to deposit the amount of the royalties with a trustee, so that if on appeal it was finally decided that the complainants in that case were entitled to royalties, they could be paid over to them. Bacher asked Phillip to draw the decree or a contract which would cover the matter. Phillip declined to do so, saying he knew nothing about the matter, but immediately wrote to Toulmin referring the matter to him, as being the one in possession of the facts and terms of the agreement, but signifying his willingness to draw it if Toulmin desired him to do so. Bacher at that time was ready to turn the first payment over to the trustee but wanted the decree to be entered or contract drawn before doing so.

Toulmin, in the meantime, had prepared his draft of the decree, and sent it, with the draft prepared by the other side, to Phillip who immediately sent them to Judge Woodrough who had decided the case, and later the judge notified Phillip, as did also Mr. Groves, that the decree determined upon had been sent to the clerk of the court to be entered. Phillip assumed that the sending by Toulmin of the two drafts of the decree obviated the necessity of any answer to his letter.

The decree was entered on the 12th of April as heretofore stated and on April 23rd or 24th a written agreement, prepared and signed by Groves & Watkins in behalf of Dieterich and themselves as attorneys for complainants, was presented by them to Phillip who, thinking that it carried out not only the terms but the legal effect of the decree, and authorized the putting up of the money instead of giving a bond, signed it, knowing that was what Bacher wanted done, and immediately

telephoned Bacher to go ahead depositing the money. The latter made the first deposit the next day, amounting to $15,000 which was estimated would cover the royalties accruing to that date. The appeal to the United States Circuit Court of Appeals was then perfected. After the deposit of the first amount, a report to the trustee was made each month of the sales of cones made during the preceding month, and a sum equal to the royalties thereon was deposited with said trustee. This was continued throughout the two years or more that elapsed between the rendition of the decree and its affirmance in the U. S. Court of Appeals.

The written agreement hereinabove referred to is the basis of the contention of Bruckman et al., appellants in the case at bar, that they are entitled to the interest which the trustee agreed to pay, and which he charged against himself at regular intervals, and the amount of which he deposited in court upon the granting of his application for an interpleader. Some contention, however, also appears to be made that even if the written agreement is not of sufficient validity as a contract or stipulation to give them the interest, nevertheless they are entitled to it as a sort of equitable result or consequence flowing from the decree in their favor, on the theory that the decree established their right to royalties and as they did not receive them at once, they should have the interest, or at least should have it as a sort of "natural increase" of the fund during the pendency of the Federal appeal. As to this last contention, we think it is fully disposed of by the law which governs the allowance of interest in the Federal Courts. Unless a Federal judgment directly and expressly awards interest, none can be taken or demanded; neither can a Federal District Court add interest to a judgment or decree if the judgment, decree or mandate of the Appellate Court has not directed that to be done. [In re Washington, etc., R. Co., 140 U. S. 91; Washington, etc., R. Co. v. Harmon's Admr., 147 U. S. 571; Gaines v.

Rugg, 148 U. S. 228, 243; Harrison v. Clarke, 182 Fed. 765, 768; Consolidated Rubber Tire Co. v. Diamond Rubber Tire Co., 232 Fed. 508.] Moreover, the petition filed by plaintiff sets out said written agreement in full as the basis of the claim of these appellant interpleaders, and their answer or interplea therefor bases their claim to the interest on the written agreement set out in said petition. We find nothing whatever in such answer or interplea basing their claim upon anything except the terms and conditions of said written agreement.

Said instrument recited the rendition of the decree, correctly set forth the terms thereof, named Henry Krug as the trustee with whom appellants, in lieu of an appeal bond, should deposit the money equal to the royalties. It is stated also that "arrangements have been made for the payment of interest on such deposits" and then, after providing that such deposits should be made "in strict accordance with said decree," a clause was added that "the interest allowed on such deposits shall be turned over to the parties entitled to such deposits according to the terms of said decree, so that the interest allowed on such deposits shall follow the disposition of the deposits according to the terms of said decree."

The respondents herein, Roberts Cone Mfg. Co. et al., denied that they executed the written agreement, or that it was executed by anyone with authority to do so for them. They also denied any knowledge of the existence of such an instrument until long afterwards, and alleged that upon learning of it they immediately repudiated it and never thereafter raitfied it. They also denied that there was any oral agreement which could be made the basis of the subsequently written agreement. They further pleaded want of consideration; and alleged that if it should be held that the alleged agreement was signed by the legally authorized agents or attorneys of these interpleaders, acting within the scope of their authority, then such agreement was entered into by mistake; and prayed that in such event the said instrument

be reformed to conform to the decree. They further pleaded that neither the complaint, nor the decree, nor the judgment affirming the decree, called or provided for any interest and that the latter made no provision for interest on said deposits to be paid to the complainants if successful; and that the decree estopped said complainant interpleaders from claiming said interest or any part thereof.

After hearing the evidence in support of the respective claims of the interpleaders, the chancellor found that "under the judgment rendered in the United States District Court . . . no interest was collectible thereon" and adjudged the interpleaders, Roberts Cone Mfg. Co. et al., to be the owners of and entitled to the sum deposited as interest with the clerk by Henry Krug, plaintiff in the bill of interpleader, and that interpleaders, Frederick A. Brockman et al., had no interest in said fund. The latter thereupon duly appealed to this court.

This being an equity case, it is not only within the power, but it is the duty, of the appellate court to examine the record and pass upon the evidence, determining for itself the very right of the matter. However, a certain deference is to be accorded the conclusion reached by the chancellor, and we should not disagree therewith, nor set it aside, unless satisfied that such should be done. [Sharpe v. McPike, 62 Mo. 300, 307; Reynolds' Appeal, 70 Mo. App. 580.] We have carefully studied the evidence and are not convinced that a different result from that reached by the chancellor should be announced. We do not interpret the chancellor's decree as holding that *merely* because the Federal decree provided for no interest, such fact, without regard to any other consideration, settles and determines appellant interpleaders' right to the interest in controversy. At any rate, we prefer to consider the evidence in this case on broader grounds than that.

It is manifest that the colloquy hereinbefore set forth as occurring immediately after the Federal Court had

announced its decision, is wholly insufficient to consti-
tute an oral agreement of which the written instrument
relied on can be regarded as a permanent and fixed
expression.  At best, it was nothing more than an as-
sertion upon the one side that the winners were entitled
to interest and a denial thereof on the other side, the
losers objecting to doing anything which would require
them to pay or lose interest.  This was immediately fol-
lowed by a statement on the winning side that they ought
to have interest, with a comment by the court which
agreed with and sustained the objecting losers.  Ap-
pellants herein tacitly or impliedly concede this for they
introduced evidence of an agreement claimed to have
been reached between opposing counsel immediately aft-
er the colloquy and which they claim was reached in the
short time counsel were engaged in gathering up their
respective papers preparatory to catching their trains
for home.  The evidence, however, in support of such
agreement, is not sufficient in our view to establish it,
and certainly is not strong enough to justify us in over-
throwing the result reached by the chancellor.  Said
agreement is strongly disputed; and one of the appel-
lant interpleaders, present when said agreement is
claimed to have been reached, testified concerning the
conversation that then took place, but he nowhere says
that interest was mentioned.  What he testified to could
very well have occurred, for his testimony goes no fur-
ther than that Dieterich and Toulmin while hurriedly
gathering up their papers preparatory to leaving talked
about "an arrangement for the deposit of these royal-
ties with some trustee to be selected" and that the mat-
ter could be attended to by Dieterich and Groves and
Culver & Phillip.  This is pracically no more than what
Toulmin swore he agreed to, namely, that he left the
*selection* of the trust company and of the trustee to his
clients and Mr. Phillip, but did not agree to any dis-
position of the interest different from that which he
had insisted upon in his colloquy with court and coun-
sel, nor did he leave to Mr. Phillip the disposal of such

interest, as it was not a matter of adjustment or agreement in view of the decision and ruling of the court. We are inclined to think that, in the hurry of the moment, a mistake in this regard was made, counsel for the winning side in that case erroneously assuming that an allowance of interest to them was agreed to, while counsel for the other side had no such idea in mind, in view of the decision and of what had already been said on that subject. No doubt it was this mistake that caused counsel for the winning side to inform Mr. Groves that such an arrangement had been entered into. And this is why Mr. Groves in turn presented the agreement to Mr. Phillip for his signature, with the clause therein giving the interest to the winning side. Mr. Groves had no connection with the trial, was not present when it closed nor when the alleged agreement is said to have been made, nor was Mr. Phillip. Consequently, Groves did not intentionally insert something in the written instrument not authorized in the oral agreement, but merely put in what was erroneously reported to him.

Since the written instrument is not the expression of any prior agreement in regard to the disposition to be made of the interest, and since the appellant interpleaders were not entitled to interest either under the decree they obtained or under the law as winners of that suit, it follows that said appellant interpleaders are not entitled to said interest unless the written instrument is a valid contract disposing, in and of itself, of the interest, either as an independent contract or as a contract considered as a stipulation in the patent-infringement case. However, whether it be considered in either of these lights, it is not valid for this purpose.

The rights of the parties to the patent-infringement litigation had been fixed by the decree. The only thing the losing side had to do, at the time the written agreement was signed, was to agree upon a trustee and deposit the money in accordance with the decree, in order to be perfectly entitled to their appeal.

The evidence is amply sufficient to show that Mr. Phillip had no authority to make either an independent contract in behalf of the losing litigants, or to make a stipulation which would dispose of their property outside of the purview and results of that litigation. There is no evidence that he had any power to do anything except that he was told to do; and it is manifest that he did not attempt or intend to do anything except in accordance with the decree; and that is solely what he thought he was doing when he signed the instrument. There is no evidence of any greater authority than this conferred upon him, by either Toulmin or the latter's clients themselves. And there is no evidence of any ratification of his act in the respect here considered, for neither Toulmin nor his clients knew anything of the disposition made of the interest in the written instrument for nearly two years thereafter, and as soon as it was known that such had been done, it was immediately disavowed. While an attorney may make valid agreements relating to the conduct of a suit, he has no power to dispose of his client's substantial rights without the latter's consent. [Wonderly v. Martin, 69 Mo. App. 84; Ratican v. Union Depot Co., 80 Mo. App. 528, 533; Howe v. Lawrence, 22 N. J. L. 99; Dickerson v. Hodge, 10 Atl. 111, 112.] A stipulation, not within authority impliedly or expressly given to the attorney executing it, will not be enforced. [20 Ency. Pl. & Pr. 665.] Nor will equity enforce a stipulation which, without clear authority to do so, goes outside of and beyond, or attempts to add to, the substantial terms of the decree. [Cook v. Newby, 213 Mo. 471, 482.] Nor does an attorney have any implied authority to contract away his client's substantial rights. [6 C. J. 642; State v. Clifford, 124 Mo. 492; Glover v. Bradley, 233 Fed. 721, 726.]

It is claimed that the written agreement did not bargain away any of respondents' property, since the interest was not in existence at the time the agreement was made. But of course the *right* to such interest was in existence and was a property right which belonged to

Roberts 'Cone Mfg. Co. et al., unless they had agreed, for a good consideration, to surrender it. We think that, without regard to whether a consideration can be said to have existed or not, there was no agreement to that effect which was binding upon the respondent inter-pleaders. Wherefore the disposition made by the chancellor of the interest in question is correct. Some contention appears to be made in reference to minor unimportant matters occurring during the trial. We have considered them, however, and find that they can in no way affect or change the result. The judgment is affirmed. All concur.