HALLACK, APPELLANT, v. LOFT, ADM'R, APPELLEE.

1. AUTHORITY OF ATTORNEYS.

An attorney by virtue of his retainer may do everything fairly pertaining to the prosecution of his client's cause; but an agreement to surrender or compromise any substantial right of his client is beyond the scope of his employment, and is not binding without express authority.

2. NONSUIT—JUDGMENT UPON MERITS.

A judgment of nonsuit or mere dismissal, is no bar to another action for the same cause; but a judgment upon the merits is final and conclusive upon the parties unless suspended or set aside by some proper proceeding.

3. RETRAXIT—PERSONAL CONSENT.

It is improper to enter a *retraxit*, or a judgment in the nature of a *retraxit* and having the effect of a judgment upon the merits, without the personal consent of the plaintiff in the action.

4. IMPEACHMENT OF JUDGMENT.

Where a judgment is pleaded in bar of an action, a reply setting forth facts showing that the judgment was fraudulently obtained is a sufficient replication to the plea, under the practice of this state.

5. AUTHORITY OF ATTORNEYS, UNDER CODE.

Chapter 10 of the Code does not enlarge the power of attorneys; it does not authorize an attorney to dismiss his client's action, without his knowledge or consent, so as to forever bar a recovery for the same cause.

*Appeal from the District Court of Arapahoe County*

ACTION by administrator to recover money alleged to have been wrongfully withheld from his intestate by reason of fraud and mistake in settlement of accounts.

STATEMENT OF CASE.

Hans P. Loft, as administrator of Alexander Hansen, was plaintiff below, and Erastus F. Hallack was defendant. The pleadings upon which the cause was tried, so far as the same are necessary to an understanding of the opinion, are in substance as follows:

COMPLAINT.

Plaintiff pleads that Hansen died November 29, 1888; that on December 8, 1888, Loft was duly appointed and qualified as administrator *de bonis non* of Hansen's estate; and has ever since continued to act in such capacity.

That on January 16, 1888, Hansen and defendant Hallack had an accounting of certain extended dealings and long accounts theretofore standing between them, whereby, as was then supposed by said Hansen, all said dealings and accounts were finally settled, the defendant therein giving to the said Hansen a receipt in full of all demands he had against him; but plaintiff alleges that in the final account rendered by the defendant then and there to the said Hansen several mistakes occurred against the said Hansen, whereby the said Hansen suffered damage in the sum of $2,182.04.

That the said defendant in his account to the said Hansen, on July 16, 1887, charged him as follows:

" Pay roll for June, . . . . $2,044.35
　Pd. Dreyfuss, . . . . 75.00
　A. Brown, pay roll, . . . . 51.79 "

And that in the defendant's account, rendered to the said

Hansen on September 19, 1887, he charged the said Hansen with the same items, and that on January 10, 1887, Hansen obtained $10.90 from defendant to pay expenses of a witness for the defendant in a certain suit then pending in the United States court at Denver, and which the said Hansen then and there paid out for the use of defendant, and that defendant afterwards charged said sum against him in the accounts between them wherein said accounting was had.

That Hansen did not, at the date of said accounting, know of said mistakes, etc.; and that on June 1, 1888, said Hansen demanded the payment of said sum of money, but defendant refused and still refuses to pay the same or any part thereof.

" Wherefore plaintiff demands judgment," etc.

ANSWER.

" That on and prior to the 18th day of September, A. D. 1889, there was pending in this court a certain cause wherein the plaintiff herein was plaintiff, and the defendant herein was defendant, which cause is numbered 9929 of the records of this court; and wherein this plaintiff set up the identical cause of action that is set up in this cause, and in almost the identical words of the complaint filed herein, as by the records of said suit now remaining in the said district court more fully appears.

" *And this defendant says :* That the parties in this and the said former suit are the same and are not other or different persons, and that the said former suit was, until the said 18th day of September, A. D. 1889, pending in this court, and that on the date last aforesaid the same *was fully settled by and between the plaintiff herein and the defendant herein and dismissed at plaintiff's costs,* and said *dismissal entered of record, as per stipulation of the parties then and there made and entered into ;* and that there was no reservation in said stipulation of dismissal on behalf of the plaintiff in any manner, and this defendant says that all the matters and things involved in the said former action, and in this action, *have been*

*fully settled by and between the parties herein,* and judgment rendered thereon in said cause 9929. * * *

" *Wherefore,* defendant demands judgment," etc.

### REPLICATION.

The replication, among other things, contained the following in substance : Plaintiff admits the pendency of cause No. 9929, and that the parties and cause of action therein were the same as in this action ; but denies that on September 18, 1889, or at any other time, the said action numbered 9929, referred to in said answer was fully or at all settled, by or between the plaintiff and defendant herein, or that the same was, by the plaintiff, or by any one authorized by him, on said day, or at any other time settled in full or at all or dismissed at plaintiff's costs, or that said pretended dismissal was entered of record as per the stipulation of the plaintiff, or of any one authorized or empowered by him or with any authority so to do. That said pretended settlement and stipulation were made, if at all, without the knowledge or consent of the plaintiff and without any authority from him or from the probate court of Arapahoe county, or from any other source, and were and are wholly unauthorized, illegal and void as to this plaintiff.

That said pretended settlement and stipulation purport to have been made and were made and entered into, if at all, by Samuel E. Browne, of the law firm of Browne & Putnam, of which the said Browne is a member, which said firm was, at the time, the attorneys of record of the plaintiff in said action, numbered 9929, in said court. But that the said Browne was not, at the time, nor was the said firm of Browne & Putnam on September 18, 1889, or at any other time, authorized, instructed or empowered, by the plaintiff or by the probate court of Arapahoe county, nor had they, or either of them any authority or right to make the said pretended or any settlement, of said action, or to enter into the said pretended or any stipulation with said defendant, or in pursuance thereof, or otherwise, to enter, or cause to be entered therein, an order of dismissal in said action ; but that the

action of said Browne & Putnam, and of each and every of them, was without the knowledge or consent of the plaintiff and unauthorized by him or the said probate court of Arapahoe county, and beyond the scope of their and each of their authority as the attorneys of the plaintiff, and that the plaintiff was not, at the time of the alleged settlement informed by the said Browne & Putnam, or either of them, of the same, nor has he ever been informed by them, or either of them, of the terms thereof.

### THE TRIAL.

At the opening of the trial defendant by his counsel formally announced that he had determined to rely entirely upon his plea of former judgment as a bar to the action; and that he admitted the error of $2,182.04, as stated in the complaint. Thus, plaintiff's original cause of action was fully admitted, and the burden of proof was upon defendant to sustain his plea of former judgment, or *res judicata*.

The complaint, answer, stipulation, and judgment in the former case (No. 9929) were offered in evidence in behalf of defendant in support of his plea of *res judicata*. The complaint corresponds to defendant's plea; the answer was a general denial. The stipulation after the title of the action was as follows:

" The above entitled action is settled and hereby is dismissed at the unpaid costs of the plaintiff and said dismissal may be entered of record.        BROWNE & PUTNAM,
                              Plaintiff's Attorneys.

September 18, 1889.

" ROGERS, CUTHBERT & ELLIS,
                    Attorneys for Defendant."

The stipulation bore the usual indorsements, and file mark, by the clerk, dated September 18, 1889.

The record of the judgment following the title of the cause was as follows:

" At this day pursuant to a stipulation filed herein it is ordered by the court that this cause be and the same hereby is dismissed at the costs of the said plaintiff to be taxed."

In behalf of plaintiff this evidence was objected to on the ground that the authority of the attorneys Browne & Putnam to make the settlement had not been shown, and that the evidence offered was not proper until such authority should be shown. But the court overruled the objection. The stipulation, pleadings and judgment were then received in evidence without proof of the authority of the attorneys of plaintiff Loft to make the stipulation in his behalf. This ruling was duly excepted to, and is made the ground of a cross assignment of errors. Upon the evidence thus produced defendant rested his entire defence.

Plaintiff, Hans Peter Loft, was then sworn as a witness in his own behalf. He testified that he was administrator of Alexander Hansen on September 18, 1889 ; was plaintiff in the former suit (No. 9929) against defendant Hallack ; that the former suit was for the same cause of action as this suit; that Browne & Putnam were his attorneys in that suit; but that he never authorized said attorneys or either of them or anybody else to settle the former suit, and that in fact he was never informed that there had been any settlement ; that he had asked Mr. Browne several times what became of the Hallack case, asked him several times if anything came out of that case, and that Mr. Browne said, " No, the thing has dropped. There is nothing in it; " that neither Browne & Putnam nor either of them ever notified him or told him previous to September 18, 1889, or at any other time, that the settlement of that cause was made or would be made by them.

Counsel for defendant objected to this testimony for the reason that it was immaterial, irrelevant, improper, and was an attempt to make a collateral attack upon the force and effect of the judgment of the court as read in evidence ; but the court overruled the objection ; and to this ruling defendant by his counsel excepted. This ruling is assigned for error by appellant.

The court rendered a finding and judgment in favor of plaintiff. Defendant brings this appeal.

Messrs. ROGERS, CUTHBERT & ELLIS, for appellant.

Messrs. LIPSCOMB & HODGES, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

1. An attorney retained to prosecute a cause has no implied authority to compromise it. His duty is to maintain, not to sacrifice, his client's cause. By virtue of his retainer he may do everything fairly pertaining to the prosecution; but an agreement to surrender or compromise any substantial right of his client is beyond the scope of his employment, and is not binding without express authority. Mechem on Agency, § 813; Weeks on Attorneys, § 219; 2 Freeman on Judgments (4th ed.) § 463; *Dickerson v. Hodges*, 43 N. J. Eq. 45; *Isaacs v. Zugsmith*, 103 Pa. State, 77; *Davidson v. Rozier*, 23 Mo. 387; *Vail v. Conant*, 15 Vt. 314; *Wadhams v. Gay*, 73 Ills. 415.

2. At common law judgments in civil actions are known by various names indicating their nature and effect, such as *respondeat ouster*, *quod recuperet*, *nil capiat*, nonsuit, *retraxit*, and the like.

By statute in this state judgments are distinguished as interlocutory and final; and final judgments are again distinguished as judgments of nonsuit or dismissal, and judgments upon the merits. Code, chapter 10.

A judgment of nonsuit, or mere dismissal, is no bar to another action for the same cause. But a judgment upon the merits is final and conclusive upon the parties unless suspended or set aside by some proper proceeding.

3. "A *retraxit*," says Blackstone, "differs from a nonsuit, in that the one is negative, and the other positive; the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again, upon payment of costs; but a *retraxit* is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." Book 3, p. 296.

It is improper to enter a *retraxit*, or a judgment in the nature of a *retraxit* and having the effect of a judgment upon the merits, without the personal consent of the plaintiff in the action. Such is the rule of the English common law; and, in the absence of statute, such is the rule in this country. Bacon's Abridgment, title Nonsuit, vol. 7, p. 215; Am. & Eng. Ency. of Law, title Attorney & Client, 7; 1 Freeman on Judgments (4th ed.) § 3; *Bridge v. Sumner,* 1 Pick. 370; *Lambert v. Sanford,* 2 Blackford (Ind.) 137; *Thomason v. Odum,* 31 Ala. 108; *Lowry v. McMillan,* 8 Barr (Pa.) 163; *Barret v. Third Ave. R. R. Co.,* 45 N. Y. 636.

On the trial defendant admitted plaintiff's original cause of action to be correct as stated in his complaint, and rested his defense entirely upon his plea of former judgment, or *res judicata.* Thus the burden of proof was upon defendant to sustain such plea, or plaintiff was entitled to recover.

It is contended by counsel for appellant that the judgment in the former action was in effect a judgment of *retraxit,* or a judgment upon the merits between Loft and Hallack, and, therefore, a complete bar to the present action.

It is essential to a *retraxit* that the plaintiff in person consent to the dismissal of his action. The record of the judgment in this case does not show the consent of either party in person; nor does it show the appearance of either party in person at the time the judgment of dismissal was rendered; nor does it show that the court *adjudged* that any settlement or dismissal of the cause had been *agreed upon between the parties.* It is true, the record refers to " a stipulation filed herein." But, whose stipulation? The record is silent. What were the terms of the stipulation? The record is again silent, except as it may be inferred that the terms were that the cause was settled and was to be dismissed at the costs of plaintiff. From the files of the cause a stipulation was produced, reciting that the action " is settled and hereby is dismissed at the *unpaid* costs of the plaintiff, and said dismissal may be entered of record." But it is well settled that such a document among the files is no part of the record of a cause,

and can only be made such by bill of exceptions or other appropriate action by the court incorporating the same into the record. See *Fryer v. Breeze*, 16 Colo. 325, and cases there cited. Moreover, the stipulation upon which it is assumed the court rendered judgment, did not purport to be the stipulation of the *parties* but of the attorneys; and there was nothing in the record or in the stipulation to indicate that plaintiff ever authorized his attorneys to enter into any stipulation whatever for the settlement or dismissal of his cause.

The defendant introduced no evidence except the record and the stipulation to support his plea of *res judicata*. These did not correspond to the averments of the plea. They did not show that the former action was *fully settled or settled at all by and between the plaintiff herein and the defendant herein*, nor did they show that the former action *was dismissed as per stipulation of the parties then and there made and entered into*, as was alleged in the plea. The very gist of the defense relied on was, therefore, not supported by the evidence, and so judgment was properly given in favor of plaintiff.

4. But even if the former judgment might, upon its face, be considered a judgment upon the merits, nevertheless, the finding of the trial court was right upon another ground.

The replication was not challenged by demurrer or otherwise. It appears to have been regarded by the trial court as sufficient in law and equity as a reply to the plea of *res judicata*. It was undoubtedly sufficient in substance for that purpose. By its averments of fact in detail, as good equity pleading requires, the judgment relied on as a defense to this action was directly and explicitly impeached as fraudulent. Under our practice legal and equitable relief may be had in the same action. Code, §§ 59, 70. If the matter contained in the replication had been set forth in the complaint, it would without question have been a proper mode of seeking equitable relief in connection with the claim sued on. That the facts impeaching the former judgment were first set forth in the replication was a matter of form rather than substance. Defendant was fully advised of the matters relied on to over-

come his plea; he was also entitled to controvert such matters by evidence at the trial, and so was not deprived of any substantial right. Code, § 71. Having gone to trial upon an issue thus formed, the objection to the evidence produced in support of the replication, on the ground that it was a collateral attack upon the judgment which he had pleaded as a defense, was not well taken ; nor is it to be assumed from anything in this opinion that such objection would have availed anything before the trial. The right to attack a judgment for jurisdictional infirmity, or for fraud, is not confined to the complaint; it extends as well to the answer and replication. *Thompson v. Whitman,* 18 Wall. 457; *Marr v. Wetzel,* 3 Colo. 2; *Wilson v. Hawthorne,* 14 Colo. 533; *Seeley v. Taylor,* 17 Colo. 73; *Harshey v. Blackmarr,* 20 Ia. 181, *et seq.;* 2 Freeman on Judgments (3d ed.) §§ 486, 576.

In support of his replication plaintiff testified positively that he never settled the cause, nor agreed to dismiss it, and never gave his attorneys or either of them authority so to do ; that he never had any notice whatever of the dismissal; that he had asked one of his attorneys several times what had become of the case, and that in reply he *was informed that nothing came out of it, that it was dropped, and that there was nothing in it.* This testimony was not contradicted in any manner ; it was responsive to, and fully supported, the averments of the replication. Thus the judgment upon which defendant relied was successfully impeached and overthrown.

5. In behalf of appellant it is further contended that the judgment of dismissal in the former suit must be held to have been a judgment upon the merits by force and effect of certain provisions of the code. By virtue of these provisions it is urged that an attorney of a party may, without the consent or knowledge of his client, settle, compromise, and dismiss his action, so as to forever bar his right to recover for the same cause. Chapter 10 of the Code is cited in support of this view. It reads as follows :

" Sec. 166. An action may be dismissed or a judgment of nonsuit entered in the following cases:

" *First.* By the plaintiff himself, at any time before trial, upon the payment of costs, if a counterclaim has not been made.

" *Second.* By either party, upon the written consent of the other.

" *Third.* By the court, when the plaintiff fails to appear on the trial, and the defendant appears and asks for the dismissal.

" *Fourth.* By the court, when upon trial, and before the final submission of the case, the plaintiff abandons it.

" *Fifth.* By the court, upon motion of the defendant, when upon the trial, the plaintiff fails to prove sufficient case for the jury.

" Sec. 167. In every case, other than those mentioned in the last section, the judgments shall be rendered upon the merits."

When a settled rule of the common law—a rule plain, clear and salutary, a rule of general recognition and immemorial usage—is sought to be changed by statutory enactment, it is to be expected that the statute will express the change in clear and unambiguous language, leaving little or nothing to construction or inference.

The theory that chapter 10 of the code authorizes an attorney to dismiss his client's action, without his knowledge or consent, so as to forever bar a recovery for the same cause, seems exceedingly far fetched.  Were it not that the opinion in *Merritt v. Campbell*, 47 Cala. 542, lends support to such theory, we should not deem the point worthy of discussion.  The other cases cited are explainable upon other grounds.  *Phillpotts v. Blasdel*, 10 Nev. 19 ; *United States v. Parker*, 120 U. S. 89.

Reading chapter 10 carefully, does it anywhere affirmatively appear that an attorney is authorized to settle and dismiss his client's cause of action by the entry of a judgment upon the merits without his client's knowledge or consent? Certainly not.  There is no mention of what an attorney may, or may not do, in the entire chapter ; nor is the word

attorney, or any word or words having the same or similar meaning, contained in the chapter. What, then?  " Oh," it is said,  " the chapter provides for a judgment of nonsuit or dismissal in five certain kinds of cases ; that is, under five different kinds of circumstances ; it also provides that in every case other than the five mentioned, 'judgments shall be rendered on the merits.' "

The argument is, that as the judgment of dismissal in the former suit was not rendered under circumstances corresponding to either of the five specified cases of nonsuit or dismissal, therefore it must be considered a judgment upon the merits.   Such reasoning leads to the absurd result that if a party can by any means succeed in procuring a dismissal or nonsuit of his adversary's action under circumstances different from the requirements of the code, such dismissal or nonsuit must be deemed and held to be a judgment upon the merits, and, hence, a bar to any future action for the same cause.   In other words, that there cannot be such a thing as an irregular judgment of nonsuit or dismissal, but that a judgment of nonsuit or dismissal, not authorized by the code, must be construed to have the effect of a judgment upon the merits.   In short, that a bad judgment of nonsuit is a good judgment upon the merits.

The construction contended for is altogether unwarranted. Chapter 10 does not declare that judgments other than the five kinds of nonsuit or dismissal mentioned *shall be deemed or held to be judgments upon the merits*.   The provision is, that in every case other than the five kinds mentioned, "judgments shall be *rendered* upon the merits."   But is it not possible that the court might not always observe this requirement of the code ?   If the court should render a judgment of dismissal or nonsuit in disregard of such requirement, the judgment would be a wrong to the plaintiff.   Would it remedy or mitigate the wrong to give such judgment of dismissal or nonsuit the force and effect of a judgment upon the merits ?   On the contrary, such treatment would greatly aggravate plaintiff's injury by making it practically irreparable.   What, then.

is there to justify the construction contended for? The plain, unambiguous words of the statute do not require it; justice and equity forbid it. It is said in logic that two negatives are equivalent to an affirmative; but has it ever been demonstrated that two wrongs make a right?

The purpose of chapter 10 was to prescribe the procedure by which a party having certain rights might pursue his remedy. Keeping such purpose in view, it is clear that the chapter does not extend or enlarge, and was not intended to extend or enlarge, directly or indirectly, the powers and privileges of attorneys in respect to the management of their clients' causes. Since, therefore, the court in the former suit did not render a judgment upon the merits, the judgment of dismissal cannot be construed to have such effect solely upon the ground that it was a dismissal in a case other than the five cases mentioned in chapter 10.

Our conclusions are that the judgment of dismissal was a final judgment and put an end to plaintiff's action, but that it was not a judgment upon the merits, and so did not put an end to his *cause* of action. He was, therefore, at liberty to commence another action for the same cause. It appearing that the district court committed no error prejudicial to the rights of defendant, its findings upon the issues and evidence as presented at the trial were right and must be upheld. Its judgment is accordingly affirmed.

*Affirmed.*