## No. 17,714.

JOHN RADOSEVICH *v.* MAL C. PEGUES, ET AL.
(292 P. [2d] 741)

Decided January 23, 1956.

Messrs. KOBEY, MITCHELL & McCARTHY, Mr. THOMAS E. McCARTHY, for plaintiff in error.

Messrs. MILLER & DINNER, Messrs. MATTSON & MATTSON, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to the parties by name. Pertinent facts necessary to an understanding of the issue to be determined are as follows:

Mal C. Pegues and his wife Betty, hereinafter designated as the Pegues, filed their complaint against John Radosevich in which they sought to recover for loss of property and for personal injuries resulting from an automobile accident allegedly caused by his negligence. Radosevich answered the complaint and filed a counterclaim in which he alleged that the accident was caused by the negligence of the Pegues, and that he suffered damage from the destruction of his automobile and from personal injuries sustained in the crash, and, further, sought judgment for $10,000.00 for the death of his wife who died as a result of injuries received in the collision. The Pegues filed an answer to the counterclaim on June 29, 1954, and the matter thereafter was at issue awaiting trial.

March 12, 1955, counsel for the Pegues was granted leave to withdraw his appearance. On the same day present counsel entered their appearance and sought leave to file a supplemental answer to the counterclaim. The trial court permitted it to be filed "as a Motion to Dismiss, and to be considered only as a Motion to Dismiss" and set March 17, 1955, as the date on which the motion would be heard, and for "trial of said cause to a jury, as already set, upon such issues as may remain to be heard * * *."

Upon the hearing concerning the matters set forth in the Supplemental Answer, which the court treated as a "Motion to Dismiss," witnesses were called and a release admittedly executed by the Pegues was admitted in evidence. From the evidence and admissions of counsel there is no dispute concerning the facts pertinent to the supplemental answer, which we summarize briefly.

When Radosevich was served with summons and complaint in the action he took them to his insurance carrier. Thereafter Mr. McCarthy, counsel for the insurer, called on him and undertook the defense of the action. He advised Radosevich that counsel should be employed to attend to the counterclaim since the insurance company

had no obligation in connection therewith. Radosevich employed McCarthy to prosecute the counterclaim; thus McCarthy actually was representing the insurance company's interest in defeating the claim of the Pegues by defending the action as required by the policy, and at the same time was pressing the counterclaim in which the insurance company had no interest. He and the original attorney for the Pegues had extended negotiations concerning a settlement of the respective claims of the parties, with the result that an instrument entitled "Release of all Claims" was executed by the Pegues on payment to them of $1500.00 by the insurance company which was carrying the liability insurance for Radosevich. The draft payable to the order of the Pegues was signed by attorney McCarthy as the authorized agent of the company. The release was signed and the payment made March 2, 1955. This was fifteen days prior to the date previously set for trial. Radosevich had no knowledge of the release or its contents, and had not authorized it even though it purported to release him from liability growing out of the accident. He first learned about it on the date the case was set for trial. The "settlement" was the voluntary act of the insurance carrier acting through its attorney, who also was the attorney of record for Radosevich. As counsel for the latter he had the responsibility of defending against the claim of the Pegues and also of pressing the counterclaim of his client.

The said release contained two unusual provisions as follows:

"It is understood and agreed that the Mid-Continent Casualty Company is making a claim under its subrogation rights for the sum of $1,498.00 and this release is not intended to include this claim but rather the said subrogation claim of the Mid-Continent Casualty Company is specifically excluded herefrom.

\* \* \*

"It is further understood and agreed that this settle-

ment is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of John Radosevich, by whom liability is expressly denied."

From the undisputed evidence it is clear that at the time the "settlement" was made, those who participated therein did not intend to bar trial of the issues raised on the counterclaim, nor did they intend to bar prosecution of the claim of the Pegues for property damage in so far as the subrogated claim of their own insurance carrier was concerned. This was specifically provided for in the first of the above quotations. It is equally clear that Mr. McCarthy stated he had no authority to dismiss or settle the counterclaim of Radosevich and that any settlement that would be made with the Pegues, if the offer of his insurance company was accepted, would have to be limited entirely to the claim of the Pegues and under no circumstances could the counterclaim of Radosevich be released.

The Pegues were advised that acceptance of the money and execution of the release by them in no way affected or concerned the counterclaim of Radosevich. They further were instructed that it was their duty under the terms of their own insurance contract to appear on the date of trial and prosecute the subrogated claim and defend against the counterclaim.

In disposing of the matters argued, the trial court said, inter alia:

"* * * the ruling is; that the release attached as an exhibit to the Supplemental Answer and Counter Claim, having been admitted, * * * we are going to. hold that that acts and constitutes and has the legal effect of being a full and complete compromise of both parties and therefore the case, Complaint and Counter Claim, are both dismissed."

Judgment was entered accordingly, and Radosevich, seeking reversal of the judgment, brings the cause to this Court for review by writ of error.

## Question to be Determined.

*Does an attorney, who has entered his appearance on behalf of a party, have the authority to compromise and settle the claim of his client without the knowledge or consent of the client?*

The question is answered in the negative. The trial court apparently was of the opinion that when the insurance company, who was not a party to the action, in effect bought immunity from liability to indemnify Radosevich by the payment of $1500.00 to the Pegues, the knowledge and participation in that transaction by the attorney for Radosevich had the effect of dismissing his counterclaim, even though the latter had no knowledge whatever of the "settlement" and even though none of the parties thereto intended such a consequence and expressly provided to the contrary. In reaching this conclusion the trial court erred.

Even though we assume that the attorney for Radosevich actually intended to release the claim of his client, which the record here shows he did not, and had executed a release on behalf of his client and stipulated in open court for a dismissal of the action; a judgment of dismissal, entered under such circumstances, would be set aside on motion if it was undisputed that the client had no knowledge thereof and had not specifically authorized the action to be taken. In *Lewis v. Vache,* 92 Colo. 358, 20 P. (2d) 554, this Court said: "The general rule is that an attorney may not compromise his client's cause without express authority." To like effect is the holding in *Hallack v. Loft, Adm'r.,* 19 Colo. 74, 34 Pac. 568.

It is clear that a lawyer is without power to compromise or settle his client's cause without express authority to do so, even though he purposely and intentionally tries to bring about that result. It would be strange logic indeed to hold that though a lawyer definitely intended not to compromise his client's cause, yet the law would imply an intent to do the very thing

which it holds he was without power to do, and would work a result exactly opposite to that which was intended.

The record before us does not require determination of the question which would have been presented if Radosevich had been an active participant in the "settlement" transaction or had approved the same.

The judgment is reversed and the cause remanded for trial upon the issues undisposed of by the terms of the release.