589 P.2d 1028

Charles AUGUSTUS, Plaintiff-Appellee,

v.

JOHN WILLIAMS & ASSOCIATES,
INC., a Missouri Corporation,
Defendant-Appellant.

JOHN WILLIAMS & ASSOCIATES,
INC., a Missouri Corporation,
Plaintiff-Appellant,

v.

Charles AUGUSTUS and Peggy Augustus, his wife, Defendants-Appellees.

STATE of New Mexico, ex rel. Toney
ANAYA, Attorney General,
Plaintiff-Appellee,

v.

JOHN WILLIAMS & ASSOCIATES,
INC., a Missouri Corporation,
Defendant-Appellant,

and

Charles Augustus, Defendant-Appellee.

No. 11734.

Supreme Court of New Mexico.

Jan. 8, 1979.

Rehearing Denied Feb. 5, 1979.

Dow & Feezer, James L. Dow, Carlsbad, for defendant-appellant.

Matkins & Martin, W. T. Martin, Jr., Carlsbad, for plaintiff-appellee Augustus.

Toney Anaya, Atty. Gen., Santa Fe, for plaintiff-appellee State of New Mexico, ex rel. Toney Anaya.

OPINION

FEDERICI, Justice.

Originally three separate causes of action were filed in the District Court of Eddy County: *Augustus v. John Williams & Associates, Inc. and John Williams, individual-*

*ly,* No. 31791; *John Williams and Associates, Inc. v. Augustus,* No. 32223; and *State of New Mexico, ex rel. Toney Anaya, Attorney General v. John Williams, John Williams Associates, Inc. and Augustus,* No. CV–77–13. The three cases were consolidated for trial. Judgment was entered for the State in Cause No. CV–77–13 based upon a settlement stipulation and no appeal was taken therefrom. The remaining two causes were tried to a jury. The court directed a verdict for John Williams, individually. The jury returned a verdict for Augustus (appellees) and against John Williams Associates, Inc. (appellant). Judgment was entered in accordance with the jury verdict. This appeal followed.

The main issue presented for review by appellant is whether the trial court erred in refusing to enforce an alleged oral settlement agreement between the parties.

Negotiations were commenced in early February 1977, between attorneys for the parties, James L. Dow, for appellant, and Harvey W. Fort, for appellees. These discussions resulted in an oral offer being made by appellant's attorney to appellees' attorney, which was rejected by appellees' attorney.

Thereafter, by letter dated February 24, 1977, a counter-offer was made by appellees' attorney to appellant's attorney. This letter said:

> Dear Les:
>
> In order to dispose of the above cases and the matter outstanding with the State of New Mexico, my client makes the following offer:
>
> Williams to deed Augustus the acreage under the sales contract. Augustus will give up all rights to any monies under the escrow contracts and all rights and claims under his counterclaims in Cause No. 32223, will ask for no reimbursements for finishing the old water line or the money expended on the new water line, and will turn everything over to Williams.

This counter-offer was never accepted by appellant or his attorney.

The attorneys for appellant and appellees met several times thereafter to discuss the possibility of a settlement agreement. The attorneys met in the office of appellant's attorney on March 11, 1977, and again on March 14, 1977. At the March 14 meeting, a proposed oral agreement to settle the lawsuits was agreed upon by the attorneys.

On March 14 and 15, 1977, attorneys for appellant and appellees began the preparation of documents, including a judgment which incorporated the provisions of the proposal oral settlement. The judgment and form of the other documents were approved by the respective attorneys.

Late in the afternoon on March 15, 1977, appellees' attorney called appellant's attorney by telephone and informed him that appellees refused to sign the deeds and other instruments as purportedly agreed to in the alleged oral agreement *unless appellant would assume all liability and responsibility for the water lines and sewer lines placed on the property.* The attorney for appellant then informed appellees' attorney that he considered the matter settled and would not agree to the changes requested by appellees. On March 25, 1977, appellees changed attorneys.

With reference to the authority of an attorney to bind his client to an agreement, § 36–2–11.B, N.M.S.A.1978 (formerly § 18–1–10(2), N.M.S.A.1953 (Repl.1970)), provides:

> *36–2–11. [Authority of attorneys.]*
>   An attorney has authority:
>
>   .    .    .    .    .
>
>   B. to bind his client to any agreement in respect to any proceeding *within the scope of his proper duties and power* . . . (Emphasis added.)

■ An oral settlement made for a client by his attorney who has specific authority to settle is enforceable under certain circumstances. *Bogle v. Potter,* 72 N.M. 99, 380 P.2d 839 (1963); *Zamouski v. Gerrard,* 1 Ill.App.3d 890, 275 N.E.2d 429 (1971). Certain basic principles of law applicable to the authority of attorneys to settle cases are well established. They are stated in *Nehleber v. Anzalone,* 345 So.2d 822 (Fla.App. 1977):

(1) A party seeking judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party.   .   .   .

(2) The mere employment of an attorney does not of itself give the attorney the implied or apparent authority to compromise his client's cause of action.   .   .   .

(3) An exception to the general rule is a situation in which the attorney is confronted with an emergency which requires prompt action to protect his client's interest and consultation with his client is impossible.   .   .

(4) A client may give his attorney special or express authority to compromise or settle his cause of action, but such authority must be clear and unequivocal.   .   .   .

(5) An unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client.   .   .   .

*Id.* at 822–23 (citations omitted).

In *Hayes v. Eagle-Picher Industries, Inc.,* 513 F.2d 892, 893 (10th Cir. 1975), the court said:

It is fundamental that an attorney does not by reason of his employment have authority to compromise his client's cause of action absent an emergency requiring prompt action. Numerous cases enunciating this are noted in Annotations 30 A.L.R.2d 944, 945 (1953) and 56 A.L.R.2d 1290, 1291–92 (1957). Our court has recognized and applied this well recognized rule in the relatively recent decision in *Thomas v. Colorado Trust Deed Funds, Inc.,* 366 F.2d 136 (10th Cir. 1966). While there are some cases which say that a presumption exists that the attorney of record has authority to settle his client's claim, if such a presumption exists it is rebutted easily   .   .   .   .

■ There are other exceptions to the rule announced in *Nehleber* and *Hayes* that the mere employment of an attorney does not of itself give the attorney the implied or apparent authority to settle his client's cause of action. For example, one exception to the rule exists where, although the attorney has not been authorized to settle, the client accepts the benefits of the settlement before attempting to treat the settlement as unauthorized and unenforceable. In that case, the client is bound by his attorney's settlement. *Nagymihaly v. Zipes,* 353 So.2d 943 (Fla.App.1978); *Appeal of Scott Tp.,* 31 Pa.Cmwlth. 505, 377 A.2d 826 (1977).

For other cases which present the case law on the rule and its exceptions *see: United States v. Beebe,* 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901); *Richfield Oil Corporation v. La Prade,* 56 Ariz. 100, 105 P.2d 1115 (1940); *Radosevich v. Pegues,* 133 Colo. 148, 292 P.2d 741 (1956); *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.,* 42 Ill.App.3d 865, 1 Ill.Dec. 555, 356 N.E.2d 837 (1976); *Scott v. Moore,* 52 Okl. 200, 152 P. 823 (1915); *Anderson v. Oldham,* 82 Tex. 228, 18 S.W. 557 (1891); *McMillan v. McMillan,* 72 S.W.2d 611 (Tex.Civ.App.1934); *Kreis v. Kreis,* 57 S.W.2d 1107 (Tex.Civ. App.1933). *See also* Annots., 56 A.L.R.2d 1290 (1957) and 30 A.L.R.2d 944 (1953).

■ Section 36–2–11.B does not alter the case law which governs the authority of an attorney to settle or compromise cases for his client.

It is true in this case that appellant's attorney thought that all major issues had been covered in the settlement negotiations; however, when appellees' attorney was called as a witness, he testified that he had no authority to enter into a final settlement agreement nor to approve the judgment without his client's consent. In his testimony he said:

I did not have any authority in the case to sign that judgment as I explained to the Court yesterday, without the okay of the client, because there were things in there he had to see. *I explained that to Mr. Dow.* I thought he [appellee] would accept it at the time and would sign, *but I had no authority.* (Emphasis added.)

The attorney also testified that appellees had not seen the proposed judgment and had not approved it.

Appellant relies on *Bogle v. Potter, supra,* to support his argument that the alleged settlement should be enforced. In *Bogle* one party made a written offer of settlement which was accepted by the other party. The offer did not include the details of carrying out the agreement in such a manner as to eliminate a tax liability. This Court said:

> The failure of Potter to include in the letter, making the offer, all details of carrying the proposal into effect to accomplish its purpose did not prevent there being a meeting of the minds and an intention to be bound. *Those details were not essential to the proposal, because, without them, the offer was not too indefinite for enforcement.* The details of carrying out the agreement in such manner as not to create a tax liability did not change the terms or purpose to be accomplished by the offer. *Stites v. Yelverton,* 60 N.M. 190, 289 P.2d 628; *Duggan v. Matthew Cummings Co.,* 277 Mass. 445, 178 N.E. 825. (Emphasis added.)

*Id.* 72 N.M. at 105, 380 P.2d at 843.

In this case the record clearly shows that appellees would not accept the settlement because they demanded that appellant agree to install the water and sewer lines at its own expense. The liability for the water and sewer lines was not a minor detail. It was an essential element to be included in the proposed settlement; without it the proposed settlement was incomplete. Thus, *Bogle* is distinguishable. It does not apply to the facts in this case.

■ There is substantial evidence in the record to support the conclusion reached by the trial court that the alleged settlement should not be enforced.

■ Appellant further contends that appellees are estopped from denying that their attorney had the authority to represent them in negotiating the settlement and approving the form of judgment. Appellant cites *In Re Williams' Will,* 71 N.M. 39, 68–69, 376 P.2d 3, 23 (1962), in support of its equitable estoppel argument:

> The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*See also: Westerman v. City of Carlsbad,* 55 N.M. 550, 237 P.2d 356 (1951). We have no quarrel with the elements set forth in *In re Williams' Will.* However, all of the elements of equitable estoppel are not present in this case. The record quoted above indicates that appellant's attorney knew that appellees' attorney had no authority to settle the case.

■ Appellant contends finally that the trial court erred in removing from the jury the issue of liability for installation of the subdivision water lines. The court found that a health hazard existed, ordered the lines repaired and the proceeds of the receivership used to pay for the repairs. The court also found that both appellant and appellees were subdividers under New Mexico law. Appellant acknowledges in his brief that he agreed to the entry of the order regarding payment for the water line from receivership proceedings and that the order in CV–77–13 was to be treated as final. In addition, at trial, the jury, under a special interrogatory, found that appellee acted as an agent for appellant. No challenge to the special interrogatory or its answer was made by appellant. Appellant did not tender to the court any instruction

on the water line liability, nor did it submit a special interrogatory to the jury on the issue. There was no misrepresentation upon which appellant was entitled to rely. With appellees acting as agent for appellant, the responsibility and liability for furnishing water of proper quality to the subdivision rested upon appellant.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA and PAYNE, JJ., concur.