**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 15 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MANUEL M. CHAVEZ,

      Plaintiff--Counter-
      Defendant--Appellant,

v.

PRIMUS AUTOMOTIVE
FINANCIAL SERVICES,

      Defendant--Counter-
      Claimant--Appellee.

Case No. 97-2142

(D.C. CIV-96-1348-JC)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before ANDERSON, HENRY, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Manuel M. Chavez, a pro se plaintiff and counter-defendant, appeals the

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

district court's enforcement of a settlement agreement entered into by Mr. Chavez's former attorney and the defendant, Primus Automotive Financial Services ("Primus"). Mr. Chavez claims (1) that his attorney did not have authority to bind him to the settlement, (2) that the district judge did not have the power to settle the case, (3) that the district judge was biased against him, and (4), as a peripheral matter, that Primus's attorney should be disqualified because Mr. Chavez subpoenaed him to appear in a criminal trial. Because we find that the district court's determination that Mr. Chavez's attorney acted with apparent authority was clearly erroneous, we vacate the order enforcing the settlement and remand for further proceedings. Because we find all of Mr. Chavez's other claims to be untimely or without merit,[1] we dismiss those claims and deny Mr. Chavez's petition to disqualify Primus's attorney.

---

[1] It is a general rule that this court will not consider an issue on appeal that was not raised in the district court. See Rademacher v. Colorado Ass'n of Soil Conservation Dists. Med. Benefits Plan, 11 F.3d 1567, 1571 (10th Cir. 1993). However, one of Mr. Chavez's claims is that the district court was biased in enforcing its final order, a claim which, by its terms, did not arise until the order was issued. Additionally, his concern about Primus's attorney ripened when the attorney was subpoenaed, which was after the district court had issued its final order. Therefore, we will consider these issues on appeal.

2

## I. BACKGROUND

Primus, a corporation with citizenship in New York and Tennessee, see Rec. doc. 1 ¶ 3, repossessed a van Mr. Chavez had financed through Primus. See id. Ex. A ¶ 1; Rec. doc. 2 ¶ 1. In response, Mr. Chavez, a citizen of New Mexico, see Rec. doc. 1 ¶ 3, filed a "Complaint for Repossession" in the District Court of San Miguel County, New Mexico, seeking roughly $12,500 in compensatory and $300,000 in punitive damages. See id. Ex. A, at 3. Mr. Chavez then retook the van (it is not clear what means were used, only that self-help was the method) from where Primus had stored it. See Rec. doc. 2, at 8. Primus tried to take the van back from Mr. Chavez, but the men it hired to repossess the van were dissuaded by Mr. Chavez's persuasive use of a firearm. See id. at 8-9; Rec doc. 19, Victim Statement ¶¶ 9-10. Mr. Chavez filed a criminal assault complaint against the repossession agents soon thereafter. See Rec. doc. 19, Uniform Incident Report.

In the meantime, Primus had received Mr. Chavez's complaint, and filed a timely notice of removal to the United States District Court for the District of New Mexico. See Rec. doc. 1. Primus also filed an answer in which it counterclaimed against Mr. Chavez for amounts it asserted were due on the van and another car and asked for replevin of the van, which remained in Mr. Chavez's possession. See Rec. doc. 2.

Mr. Chavez's complaint originally asserted a 42 U.S.C. § 1983 claim. See Rec. doc. 1, Ex. A ¶ 7. However, the district court noted that there was no state actor or action alleged in the pleadings and, construing the pro se complaint liberally, instead found Mr. Chavez's factual allegations to state claims for breach of contract and

3

replevin. See Rec. doc. 3, at 2. Based on these findings, the district court dismissed the § 1983 claim with prejudice and ordered that the claim proceed on the contract and replevin grounds. See id.

After filing his complaint but before responding to Primus's counterclaims, Mr. Chavez retained an attorney, John Aragon. See Rec. doc. 7, at 5. Mr. Aragon answered Primus's counterclaims and appeared in front of the magistrate and district court on Mr. Chavez's behalf. See Rec. doc. 7; Rec. doc. 21, at 1. Mr. Aragon also negotiated informally with Primus's counsel in an effort to reach a settlement and attended a formal settlement conference with Mr. Chavez before the magistrate judge. See Rec. doc. 21. On February 4, 1997, Mr. Aragon agreed to a settlement of the case and, during a status conference, informed the district court of the settlement. See id.

On February 11, Primus's counsel, Andrew Simons, forwarded a copy of the proposed settlement agreement to Mr. Aragon and requested that Mr. Aragon review the documents and have Mr. Chavez sign them. See Rec. doc. 15, at 1. For approximately two months, Mr. Simons continued his efforts to have Mr. Chavez sign the settlement documents. See Rec. doc. 14 ¶¶ 4-9. Finally, Mr. Simons filed a motion to enforce the settlement. See Rec. doc. 15, at 1.

In response to the motion to enforce the settlement, Mr. Aragon filed a motion to withdraw as counsel. See Rec. doc. 16. In his motion, he agreed that

4

he had accepted the proposed settlement offer of February 4.  See id. ¶ 1.

However, Mr. Aragon's motion added that Mr. Chavez subsequently contacted

him and told him that "[Mr. Chavez] felt pressured when he approved the

settlement" and "that [Mr. Chavez] wished to terminate [Mr. Aragon's] services."

See id. ¶ 2.  According to Mr. Aragon, "Mr. Chavez now wishes to avoid the

settlement."  See id.

Mr. Chavez submitted his own response to the defendant's motion to

enforce the proposed settlement.  See Rec. doc. 19.  Mr. Chavez stated that he

"never authorized or accepted" the settlement of February 4.  See id. ¶ 2.  With

his response, he submitted a letter addressed to Mr. Aragon which reads:

> Th[is] letter is in regards to your telephone call to me on Fedruary
> [sic] 4, 1997 at Grants New Mexico. . . .  If you can recall, you gave
> me an ultimatum to either accept a $9,000.00 negotiated settlement
> with PRIMUS or you would withdraw from representing me.
> Because you called me at a public area . . . I was not able to talk
> privately.  A day after your phone call I attempted to call you . . . and
> left you a message on your answering machine but you never
> returned my call.  Please be advised that I have decided to take your
> ultamatum [sic] and ask that you withdraw from my case with any
> attempts by you to settle my claim hereby denied.

See id. at 4.

After considering the motions, briefs, and documents submitted by the

parties--but without holding any type of evidentiary hearing--the court granted

Mr. Aragon's motion to withdraw and granted Primus's motion to enforce the

proposed settlement.  See Rec. doc. 22, at 1.  The district court assumed, without

5

finding, that Mr. Aragon acted outside the scope of his express authority in accepting the settlement agreement. See Rec. doc. 21, at 2 ("[Mr. Chavez] argues in his response that he should not be bound by his counsel's settlement of his case because he had not given his attorney authority to settle the case. Although [Mr. Chavez] has presented no evidence that his counsel acted outside the scope of his authority, I will assume that he did so for the purposes of this motion."). However, the district court found that Mr. Chavez had given Mr. Aragon apparent authority to settle the case and thus was bound by the proposed settlement. See id. at 3. The district court found apparent authority in the following facts: Mr. Aragon conducted informal settlement negotiations with Primus's attorneys; Mr. Aragon and Mr. Chavez appeared together to conduct formal settlement negotiations at a settlement conference before the magistrate judge; and Mr. Aragon appeared for Mr. Chavez at the February 4 status conference at which Mr. Aragon agreed that the case was settled. See id. at 3.

Mr. Chavez appealed the district court's decision to enforce the proposed settlement claiming that he never agreed to settle. See Aplt's Br. ¶ 1. Also, Mr. Chavez raised two new issues for consideration on appeal: (1) that the district judge did not have the power to enforce the judgment because the case had been assigned to the magistrate judge under Rule 73.1 of the Rules of the United States District Court for the District of New Mexico and (2) that the district court was

6

motivated to rule against Mr. Chavez by malice, retribution, and discrimination. See id. ¶¶ 3-7.  Finally, while this appeal was pending, Mr. Chavez requested that we remove Mr. Simons from this case because Mr. Simons is, according to Mr. Chavez, a material witness in the criminal assault trial involving the repossession agents.  See Compl. for Disqualification of Def.'s Att'y (dated July 15, 1997).

## II.   DISCUSSION

A.   Standard of Review

We review a district court's order enforcing a settlement agreement for abuse of discretion.  See United States v. Hardage, 982 F.2d 1491, 1495 (10th Cir. 1993).  A misapplication of the law is an abuse of discretion.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law. . . ."); Wang v. Hsu, 919 F.2d 130, 130 (10th Cir. 1990) ("An abuse of discretion occurs only when the trial court based its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling.") (internal quotations omitted).

B.   Mr. Aragon's Authority to Bind Mr. Chavez to the Settlement Order

Primus maintains that Mr. Chavez presented no arguments on appeal regarding the settlement order and thus has abandoned his challenge to the order. Primus is mistaken. Mr. Chavez reiterates in his opening brief before this court that "no settlement had been reached." Aplt's Br., at 2. Therefore, we will consider the settlement order on appeal. As stated above, the district court's ruling assumed, without deciding, that Mr. Aragon had no express authority to settle the case. Therefore, for our purposes, whether or not Mr. Aragon bound Mr. Chavez to the settlement order depends entirely on whether Mr. Aragon had apparent authority to settle Mr. Chavez's case.[2]

"[A]pparent authority arises from the principal's manifestations to third parties . . . ." Romero v. Mervyn's, 784 P.2d 992, 996 (N.M. 1989); see also Comstock v. Mitchell, 793 P.2d 261, 264 (N.M. 1990) (Ransom, J., specially concurring) ("I wish to emphasize that apparent authority must emanate from the conduct of the person to be charged as principal."); Restatement (Second) of

---

[2]    Mr. Aragon's response to the motion to enforce the settlement indicates that he did have express authority to settle: "[Mr. Chavez] felt pressured when he approved the settlement." See Rec. doc. 16 ¶ 2. However, Mr. Chavez directly contradicts Mr. Aragon by expressly denying that he agreed to settle. See Rec. doc. 19 ¶¶ 2-4. Regrettably, neither the district court nor Primus pursued Mr. Aragon's contention that Mr. Chavez had approved the settlement. Thus, the only actual evidence we have in the record relating to Mr. Aragon's express authority is Mr. Chavez's letter denying that he ever granted such authority. Based on that evidence, we cannot find express authority and have no alternate ground for upholding the district court's enforcement of the settlement agreement.

8

Agency § 8 cmt. 3, § 27 cmt. a (1958). "The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent . . . ." Restatement (Second) of Agency § 27 cmt. a. We can find no indicia of authority emanating from Mr. Chavez to Primus or the court which would create the necessary apparent authority in Mr. Aragon to bind Mr. Chavez to the settlement agreement.

The district court found Mr. Aragon's apparent authority to settle in the basic facts of his representation of Mr. Chavez:

> Plaintiff clothed his attorney with apparent authority to settle his case. Plaintiff's attorney conducted informal settlement negotiations with Defendant's attorneys and appeared with Plaintiff and conducted formal settlement negotiations at a settlement conference before Magistrate Judge Puglisi. Plaintiff's attorney also appeared for Plaintiff at the February 4, 1997 status conference. It is at this conference that Plaintiff's attorney acknowledged to the Court that the case had been settled. I find that, because Plaintiff allowed his attorney to represent him in these matters relating to settlement and the status of the case, Plaintiff "held [his] attorney out to opposing counsel and to the court as having authority to settle." Therefore, Plaintiff is bound by his attorney's settlement of his case, and I will enforce that settlement.

Rec. doc. 21, at 3 (citation omitted) (emphasis added). This statement of Mr. Aragon's apparent authority is erroneous because it relies entirely upon Mr. Aragon's negotiations with Primus and appearances before the court. Admittedly, Mr. Chavez was with Mr. Aragon at one of the appearances before the magistrate

9

judge. However, we fail to see how one's presence at a formal settlement conference is, in and of itself, a representation to the court that one's attorney has the authority to settle a case. Nor does the district court suggest that Mr. Chavez made any oral or written representations to the magistrate judge, the district court, or to Primus that Mr. Aragon had the authority to settle his case. By relying solely on Mr. Aragon's normal course of representation of Mr. Chavez, the district court's order ignores the fact that apparent authority can <u>only</u> derive from the representations of the principal (Mr. Chavez) to the third parties (Primus and the district court), and instead focuses on the authority Mr. Aragon implied by his position as Mr. Chavez's attorney.

However, an attorney in New Mexico does not, merely by representing his client in settlement negotiations, become vested with apparent or implied authority to settle the client's case.

> Certain basic principles of law applicable to the authority of attorneys to settle cases are well established. . . .
> (1) A party seeking judgment on the basis of compromise and settlement has the burden of establishing assent by the opposing party. . . .
> (2) <u>the mere employment of an attorney does not of itself give the attorney the implied or apparent authority to compromise his client's cause of action. . . .</u>
> (5) An unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client. . . .

10

_Augustus v. John Williams & Assocs._, 589 P.2d 1028, 1029-30 (N.M. 1979) (emphasis added) (citation omitted). "[T]he mere employment of an attorney does not give him the actual, implied, or apparent authority to compromise his client's case. In other words, a principal must hold out his attorney as possessing authority to act on his behalf beyond procedural matters." _Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc._, 749 P.2d 90, 92 (N.M. 1988) (citations omitted). _See also Diversified Dev. & Inv., Inc. v. Heil_, 889 P.2d 1212, 1218 (N.M. 1995) ("attorney does not have implied authority to compromise client's cause of action") (citing _Augustus_, 589 P.2d at 1029-30); _Bolles v. Smith_, 591 P.2d 278, 280 (N.M. 1979) ("In order for an attorney to bind a client to a settlement agreement, he must have specific authority to do so, unless there is an emergency or some overriding reason for enforcing the settlement despite the attorney's lack of specific authority."); _see generally_ Eunice A. Eichelberger, _Authority of Attorney to Compromise Action--Modern Cases_, 90 A.L.R. 4th 326 (1991) (discussing recent cases involving scope of attorneys' actual and apparent authority to settle cases).

Of the many New Mexico cases available to it, the only case Primus relies upon for the substance of its argument is _Navajo Tribe_. However, read in its entirety, that case actually bolsters Mr. Chavez's claim that there was no apparent authority here. In _Navajo Tribe_, the New Mexico Supreme Court enforced a

11

settlement agreement that it determined had been entered into with apparent authority. Navajo Tribe, 749 P.2d at 92. The court stated that, "[i]n New Mexico an attorney, notwithstanding the lack of express authority, can bind a client to a settlement agreement if there is some overriding reason for enforcing it." Id. (emphasis added). The overriding reason for enforcement of the settlement in Navajo Tribe was that the client had been in court with his attorney on the day of trial when settlement was reached by the parties and made representations to the court regarding the settlement. See id. The client listened to the settlement read into the record, identified himself as the client, said that he understood the settlement, and stated that he approved it. See id. at 93. The court noted: "at no time during the negotiation of the settlement or its dictation into the record did [the client] voice an objection. Instead, the [client] . . . acquiesced in, and consented to, the settlement." Id. In essence, by observing while his attorney negotiated the settlement and then explicitly agreeing to the settlement upon questioning by the judge in open court, the client communicated to the court that his attorney had apparent authority to settle the agreement. See id. The court emphasized several times that the settlement was approved by the parties in open court through communications between the client and the judge and that such open-court settlements, entered into with apparent authority, should be enforced for overriding public policy reasons. See id. at 91-93.

12

None of the client involvement and public policy reasons present in <u>Navajo Tribe</u> are in evidence in the case at bar. The record only reveals one instance, during the formal settlement conference with the magistrate judge, when Mr. Chavez appeared with Mr. Aragon, and the record does not reveal what representations were made at that conference regarding Mr. Aragon's authority to settle the case without approval from Mr. Chavez. Nor does Primus claim that Mr. Chavez represented to it that Mr. Aragon had the authority to settle Mr. Chavez's claim. More importantly, Mr. Chavez was not present when Mr. Aragon and Mr. Simons settled the case or at the status conference where Mr. Aragon told the district judge that settlement had been reached. Moreover, the judge never questioned Mr. Chavez, before or after the settlement, in court or out, as to his understanding or consent to it. Accordingly, the public policy justifications for enforcing an in court settlement knowingly entered into by a client who later simply balked at the agreement are simply not implicated in the case at bar. Therefore, <u>Navajo</u> does not suggest a contradictory result when Mr. Chavez made no representations to the district judge that Mr. Aragon had the authority to settle his case, and, as noted above, merely acting as Mr. Chavez's attorney did not give Mr. Aragon implied authority to settle.

Because the district court appears to have mistaken implied authority for apparent authority and because the law of New Mexico is that attorneys do not

13

have the implied authority to settle their client's cases, the district court abused its discretion by misapplying the law in this case.

"[T]he majority of our sister circuits agree that where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993); see also Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386 (5th Cir. 1984) (remanding for an evidentiary hearing under facts very similar to the case at bar). Therefore, we remand for an evidentiary hearing so the district court can elicit facts which show that Mr. Aragon had apparent authority to settle or can reconsider its earlier assumption that Mr. Aragon did not have express authority to settle this case.

C.    Claim That District Court Did Not Have Power to Rule in this Case

Mr. Chavez claims that the parties agreed to allow the magistrate judge to make all dispositive rulings in this case under Rule 73.1 of the Rules of the United States District Court for the District of New Mexico. Therefore, Mr. Chavez concludes, the district court was without power to enter any order affecting his case. We do not need to address the district court's power in the face of a Rule 73.1 agreement because Mr. Chavez did not raise this challenge below and has produced no evidence--and we can find none in the record--that the

14

parties ever agreed to proceed under Rule 73.1. This claim is dismissed with prejudice.

D.    Claim That District Court Was Biased

Mr. Chavez has presented no evidence whatsoever to support this claim other than vague allegations that the court was biased against him because it, rather than the magistrate judge, entered an order in his case. We find this claim to be wholly without proof or merit and decline to discuss it further. It is dismissed with prejudice.

E.    Motion to Disqualify Mr. Simons as Defendant's Attorney

Mr. Chavez claims that Mr. Simons may not represent Primus in this case because Mr. Chavez has subpoenaed Mr. Simons as a material witness in the criminal assault case involving the attempted repossession of the van.[3] In response to Mr. Chavez's motion to disqualify him, Mr. Simons has submitted an affidavit explaining that he does not know why Mr. Chavez subpoenaed him to testify in the criminal case because he has no personal knowledge of the facts of the criminal case and has never met the criminal defendants.

---

[3]    Apparently, Mr. Chavez is representing the State of New Mexico as a type of private district attorney in the criminal action against the repossession agents.

15

Putting aside the fact that, based on his affidavit, Mr. Simons testimony would almost certainly be deemed irrelevant and thus excluded from the criminal trial, we do not understand why Mr. Simons would not be able to testify in the criminal suit against the repossession agents and still be able to represent Primus in this civil action. We can find no New Mexico law which would suggest that Mr. Simons should be disqualified, and the only case Mr. Chavez has directed us to is an Alabama case involving character certification for a law student--it is completely irrelevant to his motion. Instead, we are inclined to believe that the only reason Mr. Chavez subpoenaed Mr. Simons to appear in the criminal action, an action in which Mr. Simons knows none of the facts and none of the parties (save Mr. Chavez), is to try to muddy the waters in this appeal. We are not so easily blinded and deny Mr. Chavez's motion.

## III.   CONCLUSION

For the aforementioned reasons, we vacate the order of the trial court enforcing the settlement offer and remand for an evidentiary hearing, dismiss Mr. Chavez's other claims with prejudice, and deny Mr. Chavez's motion to disqualify Mr. Simons as Primus's attorney in this case. The mandate shall issue forthwith.

Entered for the Court,

Robert H. Henry
Circuit Judge

16